James G. BRANAUM, Appellant,

v.

Kae Thomas PATRICK, Appellee.

No. 16753.

Court of Appeals of Texas,
San Antonio.

Oct. 20, 1982.

Barrett Moursund, Moursund, Ball & Schmidt, San Antonio, for appellant.

Tom Joseph, San Antonio, for appellee.

Before CADENA, C.J., and CANTU and BASKIN, JJ.

## OPINION

CANTU, Justice.

This is an appeal from a take-nothing judgment rendered in a suit brought under Chapter 14 of the Texas Election Code. Tex.Elec.Code Ann. art. 14.04 (Vernon Supp.1981).

Appellant, a candidate in the Republican primary of 1980, brought suit against appellee, also a candidate in the same primary, to recover civil penalties for alleged violations of the Election Code.

Appellant, in his first amended original petition, alleged that appellee violated article 14.02(I)[1] by making and accepting a campaign contribution by loaning $400.00 to his campaign, and by making a campaign expenditure by paying a $400.00 filing fee, without first timely filing a designation of campaign treasurer. Appellant then prayed for $1,600.00, double the amount of both the unlawful contribution and of the unlawful expenditure. Appellant further prayed for reasonable attorney's fees, costs of court, and for any other relief as the court might deem just.

Appellant filed his motion for summary judgment alleging that appellee made and accepted a campaign contribution as defined in article 14.01(D) and a campaign expenditure as defined in article 14.01(E) on January 31, 1980. Appellee filed a designation of campaign treasurer for the primary election on February 7, 1980. Appellant

---

1. Art. 14.02 Appointment of Campaign Treasurer

(I) An individual intending to become a candidate for public office may file a designation of campaign treasurer before taking any affirmative action for the purpose of seeking nomination of election.

alleged that under article 14.02(F)(1)[2] the contribution and expenditure made on January 31, 1980 was illegal because no designation of campaign treasurer had been filed with the appropriate authority at that time. Thus, under article 14.04(A), according to appellant, appellee was civilly liable to each opposing candidate whose name appeared on the ballot.

Appellee also moved for summary judgment contending that Vita Mayo was his treasurer from February, 1978, through February 6, 1980, when his new campaign treasurer was designated. Exhibit A to Appellee's motion for summary judgment was a copy of the Candidate's Sworn Statement of Contributions and Expenditures filed on the last occasion required by State law after the November 1978 general election. Appellee alleged that at the time he filed this statement he had the option of designating it as a final return and thereby terminate his designation of the existing campaign treasurer, or considering such report an interim report and thereby retain the designation of the existing campaign treasurer. He claims he chose the latter. Appellee asserts that Vita Mayo's term terminated on February 6, 1980, when a new treasurer was designated. Appellee further counter-claimed against the appellant for violations of the Election Code. The record does not indicate that these motions for summary judgment were ever heard. A trial on the merits, however, was had on November 24, 1980, before the Court. Appellant testified at the trial and during cross-examination, over objection, was asked how he was damaged by the designation of a treasurer on the 7th of February. Appellant responded

A: Damage in the fact that money was spent specifically against a given candidacy without being properly filed.

Q: How was that against your candidacy, Mr. Branaum?

A: Mr. Patrick obviously ran against me in the primary. I would assume any money spent on behalf of his campaign would be with the intent to stop or quash my campaign. Therefore, any funds that were spent become damaging. If Mr. Patrick were going to run for the same office without spending a dime, then there would be no damage; would there?

Q: You feel that you were damaged because $400 was spent, paid to the party in connection with his filing as a candidate in the party primaries; is that correct?

A: I feel that I was damaged in the fact that Mr. Patrick spent money in violation of the law, basically, not publicly.

Q: How did it hurt you?—is my question, Mr. Branaum.

A: I think I have answered the question.

The trial court entered a take-nothing judgment against appellant and against appellee on his counter-claim. Findings of fact and conclusions of law were entered. The findings of fact were: (1) Kae Thomas Patrick filed for the office of State Representative District 57H in the Republican Primary for Bexar County on or about February 1, 1980. At such time, he paid a $400.00 filing fee; (2) the filing deadline for such office was February 4, 1980, at 6:00 p.m.; (3) Kae Thomas Patrick made a designation of campaign treasurer for his first such campaign in 1978 whose name was Vita Mayo; (4) Kae Thomas Patrick did not file a final Sworn Statement of Contributions and Expenditures for the 1978 campaign wherein he was the Republican nominee for the same office, but an interim statement; (5) the interim statement referred to in finding number 4 above was not a final statement; (6) Kae Thomas Pat-

2. Art. 14.02(F)(1) in pertinent part provides
Except as expressly permitted in this chapter, no contribution as defined in § 237(D)(1) shall be accepted nor any expenditure, as defined in § 237(E)(1), including the paying of

filing fee, made by an individual until he has filed the name of his campaign treasurer with the appropriate authority.
. . . .

rick filed a designation of campaign treasurer on February 7, 1980, with the Secretary of State naming Edgar Von Scheele as campaign treasurer; and (7) James G. Branaum filed for the same office in the same primary by filing a nominating petition with signatures of registered voters in lieu of a $400.00 filing fee on or about January 5, 1980.

The conclusions of law were: (1) the court has jurisdiction of the subject matter; (2) the payment of $400.00 on or about February 1, 1980, before the designation of Edgar Von Scheele as campaign treasurer on or about February 7, 1980, did not affect the outcome of the primary election; (3) the payment of the $400.00 filing fee on February 1, 1980, and the designation of Edgar Von Scheele as campaign treasurer on February 7, 1980, did not conceal any information regarding such filing fee from Plaintiff James G. Branaum, nor did it act to his detriment; (4) the Election Code does not specifically deal with a situation where a final campaign Statement of Contributions and Expenditures was not filed and a new campaign is begun in a subsequent election; (5) the Office of the Secretary of State on April 12, 1978, promulgated a directive titled "Political Funds Reporting and Disclosure Directive" concerning such circumstance about which the Election Code is silent; (6) the Directive of the Secretary of State is promulgated in fulfillment of the Office of the Secretary of State's responsibilities imposed on it by the Election Code to "obtain and maintain uniformity in the application, operation and interpretation of the election laws;" (7) Insofar as the Directive is applicable to this cause, this court finds it to be directive and not substantive; and (8) in any case, the court finds that Kae Thomas Patrick was in substantial compliance with the Election Code and the Directives of the Secretary of State.

Appellant perfected his appeal to this court and brings forth nine points of error in his appeal. Points of error one, two, three, four, seven and eight will be grouped together since they are related. In these points of error appellant argues that the court, as a matter of law, should have entered judgment in his favor on his claim for civil penalties and that it was error for the court to consider any evidence of actual damages or *substantial* compliance on the part of appellee, these being irrelevant matters in this suit. We disagree.

Article 14.04 providing a civil remedy for violations of the Political Funds Reporting and Disclosure Act of 1975 in pertinent part holds:

> (A) Any person who knowingly makes or knowingly accepts an unlawful expenditure in support of a candidate shall be civilly liable to each opposing candidate whose name appeared on the ballot in the election in which the unlawful contribution or expenditure was involved for double the amount of value of such unlawful campaign contribution or expenditure and reasonable attorneys fees for collecting same.

> \* \* \* \* \* \*

The Act also provides civil liabilities in favor of the State of Texas and prescribes criminal liability. *See* article 14.05.

Although article 14.04(A) speaks only of civil liability and not of penalties, section (C) creating civil liabilities in favor of the State of Texas recognizes that sections (A) and (B) are in the nature of penalties running in favor of aggrieved members of a class.

The distinction between the liabilities created by civil and criminal statutes was recognized by the United States Supreme Court in *Huntington v. Attrill,* 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892) when, speaking through Mr. Justice Gray, it stated:

> In the municipal law of England and America the words 'penal' and 'penalty' have been used in various senses. Strictly and primarily, they denote punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offense against its laws.

> But they are also commonly used as including any extraordinary liability to which the law subjects a wrongdoer in favor of the person wronged, not limited to the damages suffered.

Statutes giving a private action against the wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out that neither the liability imposed nor the remedy given is strictly penal.

■ It is an ancient rule of statutory construction and an oft-repeated one that penal statutes should be strictly construed against the government or parties seeking to exact statutory penalties and in favor of persons on whom such penalties are sought to be imposed. *United States v. Wiltberger,* 18 U.S. 76 (5 Wheat), 5 L.Ed. 37 (1820); *Houston E. & W.T. Railway Co. v. Campbell,* 91 Tex. 551, 45 S.W. 2 (1898); *State v. International & G.N.R. Co.,* 107 Tex. 349, 179 S.W. 867 (1915).

■ The rule favoring a strict construction is sometimes relaxed where the interests of the party who is subject to a penalty are balanced against the interests of other affected parties, as in the case where penalties are recoverable in civil actions prosecuted by private individuals. *See Mourning v. Family Publications Service, Inc.* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). Our own state supreme court has opted for strict construction of statutes penal in nature. *Tenneco Oil Co. v. Padre Drilling Co.,* 453 S.W.2d 814 (Tex.1970). This is particularly true when construing our election laws. *Canady v. Democratic Executive Committee of Travis County,* 381 S.W.2d 321 (Tex.1964); *State ex rel. Edwards v. Reyna,* 160 Tex. 404, 333 S.W.2d 832 (1960). In construing election laws courts will in turn categorize the various provisions as being either mandatory or directory. Provisions of election laws which relate to voters, and, after the voters have acted by voting, will and ought to be construed as being directory on easier terms than provisions of election laws governing what is required of candidates. This, because the right to vote is a fundamental one, whereas the right to hold an office is in the nature of a privilege. *McWaters v. Tucker,* 249 S.W.2d 80 (Tex.Civ.App.—Galveston 1952, no writ); *See also Geiger v. DeBusk,* 534 S.W.2d 437 (Tex.Civ.App.—Dallas 1976, no writ).

However, most, if not all, cases approving a strict construction of election provisions address the qualification and elegibility of candidates and not the penalty provisions of our election laws.

In *State ex rel. Edwards v. Reyna, supra,* our supreme court approved a strict construction of the ouster provisions in an action seeking removal of a candidate based upon an insufficient application. In *Brown v. Walker,* 377 S.W.2d 630 (Tex.1964) the same court strictly construed a provision of the Election Code requiring timely payment of an assessment as a condition of eligibility. Although the relator's application in that case was in full compliance with the law, payment of his assessment was not timely made. In holding the timely payment provision to be mandatory the court rejected the notion of sufficient compliance.

The court in *Gayle v. Alexander,* 75 S.W.2d 706 (Tex.Civ.App.—Waco 1934, no writ) recognized the difficulty inherent in categorizing election provisions as mandatory or directory. The court stated:

There is no universal rule or absolute test by which directory provisions in a statute may in all circumstances be distinguished from those which are mandatory, but in the determination of this question, as every other question of statutory construction, the prime object is to ascertain the legislative intent from a consideration of the consequences that would result from construing it one way or the other.

75 S.W.2d at 708.

■ Words of permissive character may be given a mandatory significance to effect the legislative intent. On the other hand, the language of a statute, however mandatory in form, may be deemed directory whenever the legislative purpose can best be carried out by such construction.

■ As a general rule, election provisions deemed mandatory in nature permit no application of the "substantial compliance" rule. *Canady v. Democratic Executive Committee of Travis County, supra; State*

*ex rel. Edwards v. Reyna, supra; Brown v. Walker, supra.*

■ But mandatory provisions in the election laws are as a rule limited to those provisions requiring the election to be by ballot, setting the day and place where the election is to be held, and prescribing the qualifications and eligibility requirements. Other provisions of the election laws prescribing the conduct of elections, the matter of publishing notices and duties of candidates are usually directory only and irregularities which do not prevent the voters from exercising freely and fairly their right to suffrage, or from having their votes properly counted are generally treated as informalities which do not vitiate the election, especially when there is no law providing that such irregularities shall render the election void. In such cases a substantial compliance is sufficient if from the facts it can reasonably be presumed that the failure to observe the strict letter of the law did not affect the result of the election. *Shrader v. Ritchey,* 306 S.W.2d 808 (Tex.Civ.App. —Beaumont 1957), *on certificate,* 154 Tex. 154, 309 S.W.2d 812; *Gray v. State ex rel. Brown,* 406 S.W.2d 934 (Tex.Civ.App.—Fort Worth 1966, writ dism'd); *State ex rel. Butchofsky v. Crawford,* 269 S.W.2d 536 (Tex.Civ.App.—El Paso 1954, no writ).

While the courts have traditionally used a substantial compliance test in cases concerning election contests, removal from the ballot and the like, the rule has been applied to suits seeking the recovery of statutory penalties in at least one case. *See Hoeneke v. Lehman,* 542 S.W.2d 728 (Tex. Civ.App.—San Antonio 1976, no writ).

In *Hoeneke v. Lehman, supra,* a suit was filed to recover liquidated damages and attorney fees because of appellant's failure to timely file a campaign expense statement as required by Tex.Elec.Code Ann. art. 14.-08 (Vernon 1967).[3] This court specifically recognized the applicability of the rule of substantial compliance to the directory provision as to time for filing. We held that while the filing is mandatory, the time for filing is merely directory. *See also State ex rel. Butchofsky v. Crawford, supra;* Sutherland, Statutory Construction, § 25.03, p. 300 (4th ed. 1972).

While we are aware of numerous cases wherein suit was brought to recover statutory penalties under the present and former election codes,[4] we have not found authorities governing the issues raised by this appeal.

■ Initially we agree with appellant that the question of actual damages, as it relates to monetary damages generally, has no relevance in an action to recover statutory liquidated civil penalties, because in such cases the penalties arise independent of and irrespective of actual monetary damages, *Texas Central Railroad Co. v. Hannay-Frerichs & Co.,* 104 Tex. 603, 142 S.W. 1163 (1912). Those penalties are allowed by way of punishment to the offender and not as compensation to the injured party. *Whorton v. Nevitt,* 42 S.W.2d 1056 (Tex.Civ.App. —Waco 1931, no writ). But the term damages is often used to connote injuries and harm in a broad sense and we note that inquiry into damages was limited by the trial court and we note that inquiry into damages was limited by the trial court solely to the question of how appellee's nonfeasance affected the stated purposes of the Election Code.[5] Under such limitations we are unable to state that the permitted inquiry for the purpose of determining

---

3. Later amended by Acts 1973, 63rd Leg., p. 1106, ch. 423, § 9, and renumbered article 14.-07 by Acts 1975, 64th Leg., p. 2263, ch. 711, § 9.

4. *See Scott v. Handy Andy, Inc.,* 490 S.W.2d 196 (Tex.Civ.App.—San Antonio 1973, writ ref'd n.r.e.); *Hoeneke v. Lehman, supra; Hogue v. Nat'l Bank of Commerce,* 562 S.W.2d 291 (Tex.Civ.App.—Eastland 1978, no writ).

5. Tex.Elec.Code Ann. art. 1.01 (Vernon 1967) establishes that one of the primary aims in the enactment of the Election Code is "that the will of the people shall prevail and that true democracy shall not perish from the Lone Star State." Any question arising under the provisions of the Code should be decided with due consideration given to that objective. *See Gray v. State ex rel. Brown,* 406 S.W.2d 934 (Tex.Civ.App.— Fort Worth 1966, writ dism'd).

whether or not the outcome of the election was affected constituted error. Under the guidelines set by case law the trial court was obligated to consider any evidence shedding light on the detrimental effect, if any, of appellee's nonfeasance.

We hold that the statute makes the appointment of campaign treasurer mandatory, and the time of designation directory. Appellee was still required to reasonably and substantially comply with the statute, and the trial court properly considered this issue in arriving at its judgment. The facts developed at the hearing fully support the trial court's findings that appellee's nonfeasance neither affected the outcome of the primary election nor acted to the detriment of appellant. The trial court did not err in considering evidence of "damages" to appellant.

Appellant next complains by his points of error five and six that the trial court erred in concluding as it did in its conclusions of law 4, 5 and 7. In view of our holding that substantial compliance was had by appellee, we need not consider these contentions since even if we agree with appellant a different disposition is not called for. However, we feel constrained to mention that we have strong reservations about appellee's proposition that a treasurer once designated continues *ad infinitem* so long as a final return is not filed.

By his final point of error appellant complains of the court's failure to award him attorney's fees. We deem it necessary to simply state that the *authorization* of attorney's fees by a statute does not *ipso facto* require that they be awarded. In view of the trial court's refusal to award penalties, the denial of attorney's fees was within its sound discretion.

Finding no reversible error the judgment of the trial court is affirmed.