**Paul RAGSDALE, Appellant,**

v.

**PROGRESSIVE VOTERS LEAGUE, et al., Appellees.**

No. 05–87–00026–CV.

Court of Appeals of Texas, Dallas.

Dec. 11, 1987.

See also 730 S.W.2d 176.

John E. Collins, Jerry Lee Hughes, Dallas, for appellant.

Donald W. Hill, Donald W. Hicks, Sr., Dallas, for appellees.

Before ENOCH, C.J., and ASHWORTH [1] and BISSETT [2], JJ.

BISSETT, Justice.

This is an appeal by plaintiff from a judgment which denied him a trial on the issues of damages and attorney's fees in a suit brought by him for alleged violations of Sections 251.008, 251.002(f)(1) and 251.002(f)(2) of the Texas Election Code (hereafter the "Code"). The defendants purport to appeal from the judgment which en-

[1.] The Honorable Clyde R. Ashworth, Justice, retired, Court of Appeals, Second District of Texas, at Fort Worth, sitting by assignment.

[2.] The Honorable Gerald T. Bissett, retired, Court of Appeals, Thirteenth District of Texas, at Corpus Christi, sitting by assignment.

joined them from conducting certain political activities until they complied with the applicable provisions of the Code.

Paul Ragsdale (hereafter "Ragsdale") filed suit against the Progressive Voters League and its officers (hereafter "PVL") on April 30, 1986. He alleged that the PVL had violated the provisions of Sections 251.-002(f)(1) and 251.002(f)(2) of the Code, and sought damages and reasonable attorney's fees pursuant to Section 251.008 of the Code.

At the time the suit was filed, Ragsdale was a State Representative for District 110 in Dallas County, Texas. He had held that office since January 1973, and was a candidate for reelection in the 1986 elections. His name appeared on the ballot in the Democratic primary along with his opponents, Charles Rose and Fred Blair.

Section 251.008(a) of the Code provides:

Any person who knowingly makes or knowingly accepts an unlawful campaign contribution or who knowingly makes an unlawful expenditure in support of a candidate shall be civilly liable to each opposing candidate whose name appeared on the ballot in the election in which the unlawful contribution or expenditure was involved for double the amount or value of such unlawful campaign contribution or expenditure and reasonable attorney's fees for collecting same.

Section 251.002(f)(1) of the Code states, in part:

No contribution shall be accepted nor any expenditure made by a political committee until it has filed the name of its campaign treasurer with the appropriate authority....

Section 251.002(f)(2) of the Code reads:

It is unlawful for a political committee to make a contribution or an expenditure in support for or in opposition to a candidate for a state or district office in a primary or general election unless the committee's designation of campaign treasurer has been filed before the 30th day preceding the appropriate election date.

The trial court granted a temporary restraining order against the PVL on the day the suit was filed, which was to continue until such time as a hearing was held on the issues of a temporary or a permanent injunction. Such a hearing was set for May 2, 1986. Both parties and counsel appeared on that date, and counsel announced ready. At the very beginning of the hearing, the trial court advised both parties and their counsel: "[W]e have ordered that this be a hearing as to the permanent injunction." Counsel for PVL said: "No, I didn't understand that." The court then said:

Okay. Then let me inform you that the temporary restraining order was modified to reflect that this hearing would be as to a permanent injunction, there being no need to have two hearings. Do you have any problem with that?

Counsel replied: "No. We do need to get it resolved."

It is Ragsdale's position in this appeal that the only issue before the trial court on May 2, 1986, was whether the temporary restraining order was to be converted into a permanent injunction. PVL insists that the issue of damages and attorney's fees were resolved at the hearing against Ragsdale because of insufficient evidence.

Apparently, PVL maintained several accounts into which monetary deposits were made and money paid out. Mr. John Wiley Price, the Chairman of the PVL Board of Directors, was treasurer of at least two of the accounts. Another account was under the control of Mr. James Whitlow.

The PVL Slate Card for the May 3, 1986, primary election was admitted in evidence. This card listed various candidates which the PVL was supporting. It established that the PVL was supporting Charles Rose, one of Ragsdale's opponents. This Slate Card was apparently financed by a "candidate assessment" program wherein the candidates would pay a certain sum to the PVL. It was also shown that the PVL members were assessed dues in the amount of $10.00 per year. Price testified that he was in charge of mailing the Slate Cards or seeing that they got mailed. The PVL

mailed out the Slate Cards and placed radio ads for the candidates it was supporting. Price admitted that he placed the ads and that he paid for them and for the printing of the Slate Cards out of PVL funds.

It was undisputed that the PVL had not filed a designation of campaign treasurer with the Secretary of State as of April 30, 1986. However such a designation was filed sometime between April 30, 1986, and May 2, 1986. In summary, it was established that the PVL engaged in a great deal of political activities such as putting up billboards, placing radio ads, utilizing a telephone bank, sending out letters soliciting monies for political purposes, and mailing out some 50,000 to 100,000 Slate Cards. It is further undisputed that the PVL endorsed, supported and spent money for Charles Rose.

Prior to the time that Ragsdale rested, his lawyer announced to the Court:

MR. COLLINS: Your Honor, if it please the Court, so we will be clear about this, we do have a count in our Plaintiff's Original Petition particularly in paragraph ten, page six, concerning the claim for damages and reasonable attorney's fees and we're not waiving that claim, if it please the Court; subject to bringing that matter to the Court's attention, we are resting at this time.

THE COURT: Very well.

Counsel for PVL then made a motion for "a directed verdict," and various exchanges occurred between the court and counsel. The court then ruled, saying: "The plaintiff's motion is granted as to the civil damages and overrule the motion as to the injunctive relief sought. Proceed, Mr. Hicks." PVL and its officers then stated they had no further evidence to present.

Whereupon, the trial judge, in open court, made the following announcement:

The overriding consideration in a case such as this has nothing to do with race; it has everything to do with a fair and honest electoral process. To help ensure fair elections and equal opportunity to all candidates, the legislature enacted Chapter 15 of the Election Code. These rules must apply to all who seek to influence the political process. It is, and must be, of no concern to the Court who receives the endorsement of the PVL. It is of utmost concern to all of our people that the support given by the PVL to candidates for public office, however well-intentioned, comply with the statutes pertaining to such support. The Court finds that the Progressive Voters League is a general purpose political committee as defined in Section 251.001 17(a).

The PVL is a non-profit corporation. The evidence, however, is insufficient that it is incorporated for any purposes other than for limited liability of its members.

The Court finds that the PVL did not designate a treasurer with the Secretary of State prior to April 30, 1986.

The Progressive Voter League did not comply with the terms of Section 251.-002(f)2 and (g) of the Texas Election Code.

The Progressive Voters League has since April 30, 1986 filed a designation of treasurer with the Secretary of State.

The Court concludes, as a matter of law, that the Plaintiff has suffered an immediate and irreparable injury by virtue of the statutory violations, for which there is no adequate remedy at law since there is no property rights to the office.

Further, the court concludes, as a matter of law, that the evidence as to civil damages was insufficient as a matter of law, thus further depriving the Plaintiff of any remedy at law.

The Court concludes that it is not inequitable for an injunction to issue upon the following terms: The Court grants the permanent injunction for a period of 30 days from the date of the filing of the campaign treasurer notification with the Secretary of State and continues the terms of the temporary restraining order as a permanent injunction during that 30–day period: after which time, the permanent injunction will expire of its own terms without further order of the Court.

All other relief is denied.

The order granting the permanent injunction was signed by the trial judge on

May 9, 1986. It contained the identical findings of fact and conclusions of law made from the bench in the announcement of May 2, 1986, but did *not* recite "all other relief is denied." Ragsdale appealed to this Court, which refused to hear the appeal for the reason that a final judgment had not been rendered or signed by the trial court.

On October 3, 1986, in response to Ragsdale's motion, the trial court signed a judgment Nunc Pro Tunc amending the order of May 9, 1986, which stated, in part:

It appearing that Plaintiff's Motion should be granted, it is therefore ordered that the Permanent Injunction dated May 9, 1986 be amended to include the following:

That all relief prayed for in Plaintiff's Original Petition not expressly granted in the Permanent Injunction dated May 9, 1986 be in all things denied.

PVL then filed a motion requesting that the trial court issue a second Judgment Nunc Pro Tunc amending the first Judgment Nunc Pro Tunc to reflect that the trial court had granted its motion for a "directed verdict," and that the evidence submitted on Ragsdale's damages claim was insufficient as a matter of law. The trial court denied the motion by order signed on December 5, 1986.

Ragsdale has timely appealed from the judgment insofar as it denied him a recovery of monetary damages and attorney's fees. He contends that the trial court erred in signing the Nunc Pro Tunc Order of October 3, 1986, which denied him a recovery of damages and attorney's fees, because section 251.008 of the "Texas Election Code specifically provides for damages and reasonable attorney's fees." He further contends that it was reversible error to deny him "his right to a trial on the issues of damages and reasonable attorney's fees." We agree.

PVL brings forward seven complaints. They are not denominated "Reply Points," "Counter–Points" or "Cross–Points," but are simply designated as "Points." An attack is made on the judgment rendered by the trial court in points one, two, three and five, wherein PVL asserts: 1) the granting of Ragsdale's motion for Judgment Nunc Pro Tunc "was in disregard of the Texas Rules of Civil Procedure and denied appellees' Motion for Judgment Nunc Pro Tunc based on appellees' race, black;" 2) "Appellees have been subjected to deprivation of their civil rights by the appellant and the trial court under order of law or custom, and have been denied due process and equal protection of law in violation of the Fourteenth Amendment of the Constitution of the United States of America;" 3) "the court's actions and rulings, under the facts and circumstances were purely political, determined who would be heard on the critical topic of black leadership, and the black community received a distorted view of the primary candidates, the Progressive Voters League and certain PVL members, friends, associations and leaders of the black community;" and 4) "the trial court intentionally or erroneously misconstrued the provisions of the Texas Election Code based on appellees' race, black, and their historic influence in the black community during election periods." At best, the "points" are "reply points." We treat them as such.

PVL further complains of the granting of the temporary restraining order and permanent injunction in points four, six, seven (a) and seven (b). For the reasons hereinafter stated, these complaints have not been preserved for appellate review and we do not consider them in this appeal.

A "counter-point" or "reply point" replies to a point relied upon by an appellant. *Jackson v. Ewton,* 411 S.W.2d 715, 717 (Tex.1967). It assists the appellate court in answering an appellant's point of error and, from an advocate's standpoint, it serves the function of showing that a point relied upon by the appellant is not valid. *Id.* "Cross-points" are points used to preserve error committed by the trial court. *Id.* They are the means by which an appellee may bring forward complaints of some action or ruling of the trial court which the appellee alleges constituted error as to it. *Id.*

■ When a judgment is definitely and distinctly severable, without separately

perfecting an appeal, an appellee cannot complain by cross-point of matters falling wholly within the portion of a judgment not brought up for review by the appellant. *Connell Construction Co. v. Phil Dor Plaza Corp.*, 158 Tex. 262, 310 S.W.2d 311, 314 (1958); *Dallas Electric Supply Co. v. Branum Co.*, 143 Tex. 366, 185 S.W.2d 427, 430 (1945).

The question then becomes, how does the appellant limit its attack on a judgment? *Connell* and *Dallas Electric* contemplate that, unless an appeal is clearly limited in the notice of appeal, the entire appeal comes forward. Since in most situations, however, a notice of appeal is no longer a prerequisite to perfecting an appeal, this way of determining the scope of all but a limited appeal is lost. *Dietz v. Dietz*, 540 S.W.2d 418, 421–22 (Tex.Civ.App.—El Paso 1976, no writ); *see* TEX.R.APP.P. 40(a)(4), as to limitation of an appeal. Additional authority, however, suggests that so long as the subject matter of a judgment is distinct and severable, an appellant may confine the subject of his appeal (apparently in his points of error) to a segment of that judgment and effectively limit the scope of any cross-appeal filed without a separate cost bond. *See Barnsdall Oil Co., v. Hubbard*, 130 Tex. 476, 109 S.W.2d 960, 963–64 (1937); *Yates Ford, Inc. v. Benavides*, 684 S.W.2d 736, 740 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). This appears to be more prevalent where multiple parties are disposed of by the same judgment, *see Illey v. Hatley*, 693 S.W.2d 506, 511–12 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.); *SVM Investments v. Mexican Exporters, Inc.*, 685 S.W.2d 424, 430 (Tex.App.—San Antonio 1985, no writ), or where cross-actions are involved at the trial level. *See O'Quinn v. Beanland*, 540 S.W.2d 526, 527 (Tex.Civ.App.—San Antonio 1976, no writ).

■ *Young v. Kilroy Oil Co. of Texas, Inc.*, 673 S.W.2d 236 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.), sets out succinctly the test for determining whether a cross-point must be preserved by the filing of a separate cost bond. If the cross-point is unrelated to the defense of the judgment against the appellant, a separate cost bond is required.

■ The PVL did not file an appeal bond in this case. The *only* appeal bond filed by any of the defendants-appellees is the bond dated December 24, 1986, signed by John Wiley Price, individually, as principal. This bond states that "the undersigned Appellant (John Wiley Price) appeals from a judgment or order which was rendered in this cause on December 5, 1986." The *only* judgment or order signed or rendered by the trial court on December 5, 1986 is the "Order Denying Defendants' Motion for Judgment Nunc Pro Tunc." Therefore, this bond cannot serve as an appeal bond for an appeal of the Judgment Nunc Pro Tunc, signed on October 3, 1986, amending the judgment signed on May 9, 1986, portions of which were appealed by Ragsdale in the instant case. Moreover, the bond dated December 24, 1986, was not timely filed, assuming, arguendo, that the bond, as filed, constituted an appeal bond for PVL and the other named defendants.

We treat points four, six, seven (a) and seven (b) as cross-points. PVL in those points attacks that portion of the judgment which granted the permanent injunction, which is a severable portion of the judgment in that Ragsdale, the appellant, appealed only that part of the judgment which denied him a recovery of damages and attorney's fees.

■ Where the appellant limits his appeal to only a part of the judgment which is otherwise severable, the appellee will not be heard on any complaint which falls wholly within that portion of the judgment which has not been brought forward for review by the appellant. *Dallas Electric Supply Co. v. Branum Co.*, 143 Tex. 366, 185 S.W.2d 427, 430 (1945); *Edgar v. Bartek*, 507 S.W.2d 831 (Tex.Civ.App.—Corpus Christi 1974, writ dism'd w.o.j.).

■ In the case at bar, the judgment which granted the injunction was severable from the claims for damages and attorney's fees. Since PVL, the appellees, did not timely file an appeal bond, an independent appeal concerning the granting of the

injunction was not perfected by the appellees; and by not doing so, they have waived their right to complain by cross-points of the trial court's granting the injunction. *Sherman v. Stein*, 173 S.W.2d 732 (Tex.Civ.App.—San Antonio 1943, writ ref'd w.o.m.); *Marshbank v. Austin Bridge Co.*, 669 S.W.2d 129, 137 (Tex.App.—Corpus Christi 1984, no writ). The judgment insofar as it granted the permanent injunction is final, and we do not notice PVL's cross-points any further.[3]

Next we consider Ragsdale's points of error and PVL's reply points. It is clear from the record that the hearing on May 2, 1986, was set for the sole purpose of deciding whether the temporary restraining order, which was granted on April 30, 1986, should be converted into either a temporary injunction or a permanent injunction. Notice was not issued concerning the trial of any damages issue as required by TEX. R.CIV.P. 245, which states: "The court may set contested cases on motion of any party, or on the court's own motion, with reasonable notice of not less than ten days to the parties, or by agreement of the parties." No notice of any "trial" setting was ever issued and there was no agreement to try the issues of damages or attorney's fees. It has been held that failure to give the required notice that a contested case has been set for trial constitutes denial of a party's due process right to be heard. *Williams v. Holley*, 653 S.W.2d 639 (Tex.App.—Waco 1985, writ ref'd n.r.e.); *Wilson v. Industrial Leasing Corp.*, 689 S.W.2d 496 (Tex.App.—Houston [1st Dist.] 1985, no writ).

■ The record shows that on May 2, 1986, counsel for both parties and the trial judge, before any evidence was presented, understood that the proceedings would be limited to the issue of the injunction. There is no legal basis for the statement, "the court concludes, as a matter of law, that the evidence as to civil damages was insufficient as a matter of law...." Ragsdale was denied the right to a trial on his claims for damages and attorney's fees,

which constituted a denial of due process. The Judgment Nunc Pro Tunc of October 3, 1986, officially denied Ragsdale his day in court with respect to his claims for damages and attorney's fees.

PVL argues that Ragsdale is not entitled to a recovery of damages and attorney's fees because, while the statutory requirement of filing a campaign manager with the Secretary of State is mandatory, the time of filing is directory. PVL admits in its brief that while it had not filed a designation of a campaign manager as of April 30, 1986, it had done so by May 2, 1986, and that under the authority of *Branaum v. Patrick*, 643 S.W.2d 745, 750–51 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.), it should not be held liable for damages or attorney's fees.

*Branaum* was decided in 1982. Suit was brought by a candidate in the 1980 Republican Primary Election against another candidate in the same primary to recover civil penalties for alleged violations of Chapter 14 of the Texas Election Code, as revised by the Legislature in 1975. The Court held:

> We hold that the statute makes the appointment of campaign treasurer mandatory, and the time of designation directory. Appellee was still required to reasonably and substantially comply with the statute, and the trial court properly considered this issue in arriving at its judgment. The facts developed at the hearing fully support the trial court's findings that appellee's nonfeasance neither affected the outcome of the primary election nor acted to the detriment of appellant. The trial court did not err in considering evidence of "damages" to appellant.

Article 14.02, subdivision F(2), of the Texas Election Code, which was in effect in 1980, and in 1982 when *Branaum* was decided, read:

> (2) a political committee existing prior to the effective date of this Act shall file a new designation of a campaign treasurer with the appropriate authority for that

---

**3.** Since the PVL did not perfect an appeal from that part of the judgment which granted the permanent injunction, we express no opinion as to whether the granting thereof was proper.

committee before accepting any additional contributions or making any additional expenditures after the effective date of this Act.

The 1975 Act was amended by the Legislature in 1983 and Article 14.02 subdivision F(2), was amended to read:

It is unlawful for a political committee to make a contribution or an expenditure in support of or in opposition to a candidate for a state or district office in a primary or general election unless the committee's designation of campaign treasurer has been filed before the 30th day preceding the appropriate election day.

The 1983 amendment was carried forward in the 1985 amendment and is now designated as "Section 251.002(f)(2)" of the present Election Code. This statute and not the 1975 statute controls the disposition of this case. *Branaum* is not on point.

■ At the time *Branaum* was decided there was no time limit as to when a political committee was required to file a designation of campaign treasurer with the Secretary of State. That was changed by the Legislature in 1983, when the 1975 Act was amended. The 1983 amendment clearly shows that the Legislature intended that the designation of a campaign treasurer for a political committee be filed with the Secretary of State *before* the 30th day preceding the appropriate election date. We hold that the provisions of Section 251.002(f)(2) are mandatory and that PVL was in violation of that statute.

The action for the issuance of a permanent injunction is severed from the action for a recovery of damages and reasonable attorney's fees. Ragsdale was denied the opportunity to present his proof on the issues of damages and attorney's fees, and the conclusion by the trial court that his proof on these issues is "insufficient as a matter of law" cannot be sustained. It was reversible error for the trial court to deny Ragsdale a recovery on the issue of damages and attorney's fees prior to a trial on these issues. "Fundamental fairness dictates that a party must be given a reasonable opportunity to be heard on the merits of his case; such an opportunity must be granted at a meaningful time and in a meaningful manner." *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex.1983). Ragsdale did not have such opportunity in this case; his third point of error is sustained.

That portion of the judgment which denied Ragsdale a recovery of damages and reasonable attorney's fees is REVERSED and the cause is REMANDED to the trial court for trial on those issues.