

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

June 29, 2004

The Honorable Frank Madla
Chair, Intergovernmental Relations Committee
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0209

Re: Whether local election officials had the discretion to accept or reject signatures on local option election petitions filed prior to the effective date of the 2003 amendments to the Alcoholic Beverage Code when the signatures were withdrawn by affidavit, or when the signatures appeared on the back side of a petition signature sheet from which certain statutory elements were absent (RQ-0159-GA)

Dear Senator Madla:

You ask two questions about local election officials' discretion to accept or reject signatures on local option election petitions that were filed pursuant to chapter 251 of the Texas Alcoholic Beverage Code (the "Code") as it existed prior to 2003 legislative amendments.[1]

Your first question specifically asks:

Do local election officials have the discretion not to accept, or count as qualified, the local option election Petition signatures of those voters who have timely demanded the withdrawal of their Petition signatures by affidavits received by an election officer on or before the Petition filing deadline?

Request Letter, *supra* note 1, at 1. Even though relevant portions of chapter 251 were amended during the last regular legislative session, *see* Act of May 22, 2003, 78th Leg., R.S., ch. 1047, § 7, 2003 Tex. Gen. Laws 3007, 3008-09, the act that amended those portions was prospective, *see id.* § 13, 2003 Tex. Gen. Laws at 3010. Your questions concern petitions filed before the effective date of that act. *See* Request Letter, *supra* note 1, at 1 ("Concerning petitions issued and submitted for certification prior to September 1, 2003 . . . ."). Accordingly, the law in effect immediately before the effective date of that act governs. *See* Act of May 22, 2003, 78th Leg., R.S., ch. 1047, § 13, 2003 Tex. Gen. Laws 3007, 3010; *see also* TEX. ALCO. BEV. CODE ANN. § 251.10, historical and statutory notes (Vernon Supp. 2004).

---

[1]*See* Letter from Honorable Frank Madla, Chair, Intergovernmental Relations Committee, Texas State Senate, to Honorable Greg Abbott, Texas Attorney General, at 1-2 (Dec. 22, 2003) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

Chapter 251 provides for a local option election by petition to determine whether or not a county, justice precinct, or incorporated city or town will legalize or prohibit the sale of alcoholic beverages. *See* TEX. ALCO. BEV. CODE ANN. § 251.01 (Vernon 1995). Local option election petitions that were subject to the pre-amendment law generally had to be filed within 30 days from the date they were issued and had to contain qualified voters' actual signatures that equaled 35 percent of the number of registered voters within the political subdivision.[2] The Code still requires that the commissioners court at its next regular session after the petition has been timely filed and verified is to order a local option election to be held on the issue set out in the petition. *See* TEX. ALCO. BEV. CODE ANN. § 251.11(a) (Vernon Supp. 2004).

The pre-amendment Code provided guidelines for verifying signatures of a local option petition, *see* Act of May 26, 1983, 68th Leg., R.S., ch. 539, § 1, sec. 215.10, 1983 Tex. Gen. Laws 3138, 3138, but it did not provide for signature withdrawal. Texas law, however, recognized the common-law right of signature withdrawal. *See, e.g., Clear Creek Indep. Sch. Dist. v. Comm'r of Educ.*, 775 S.W.2d 490, 494 (Tex. App.–Austin 1989, no writ); *Stahl v. Miller*, 63 S.W.2d 578, 579-80 (Tex. Civ. App.–Amarillo 1933, writ ref'd).[3] This right was limited in that it had to be exercised during the requisite time in which the petition could be filed. *See Tex. Power & Light Co. v. Brownwood Pub. Serv. Co.*, 87 S.W.2d 557, 558-59 (Tex. Civ. App.–Austin 1935, no writ); *see also Nunn v. New*, 222 S.W.2d 261, 265 (Tex. Civ. App.–Galveston 1949), *rev'd on other grounds*, 226

---

[2]*See* Act of May 6, 1977, 65th Leg., R.S., ch. 194, § 251.11, 1977 Tex. Gen. Laws 391, 548. The requisite number of qualified voters' actual signatures changed if the petition was for a local option election that was related to the legalization of the sale of mixed beverages only in an establishment that held a food and beverage certificate, *see* Act of May 21, 1999, 76th Leg., R.S., ch. 848, § 1, sec. 251.11, 1999 Tex. Gen. Laws 3513, 3513-14, or if the petition was for a local option election that was related to the legal sale of wine on the premises of the holder of a winery permit. *See* Act of May 22, 2001, 77th Leg., R.S., ch. 1001, § 4.01, sec. 251.11, 2001 Tex. Gen. Laws 2177, 2181. In those instances, the required number for the former was 25 percent of the registered voters in a political subdivision, and for the latter, 25 percent of the registered voters in the political subdivision that voted in the most recent general election. *See id., as amended by* Act of May 22, 2003, 78th Leg., R.S., ch. 1047, §§ 8, 12, 2003 Tex. Gen. Laws 3007, 3009-10.

[3]Most states recognize this common-law right. *See generally* M. L. Cross, Annotation, *Right of Signer of Petition or Remonstrance to Withdraw Therefrom or Revoke Withdrawal, and Time Therefor*, 27 A.L.R.2d 604 (1953). Texas courts have yet to articulate their reasoning for recognizing this common-law right, though a sister state has explained it this way:

> No provision appears either in our Constitution, the charter of the city, or general laws of the state for withdrawal of names from an initiative petition. Nevertheless[,] the great majority of cases recognize the right of withdrawal as incidental to the right of petition itself.
>
> . . . .
>
> Doubtless many petitions are signed, from motivations of caprice, good nature, thoughtlessness, malice, coercion, and hope of reward, rather than from more exalted motives, patriotic purposes and redress of real or fancied grievances.
>
> Each petitioner acts on his own responsibility and if he should change his mind, or if he should have been induced to sign under misapprehension or through undue influence, he ought to have the right to correct his mistake . . . .

*In Re Initiative Petition No. 2*, 41 P.2d 101, 102 (Okla. 1935).

S.W.2d 116 (Tex. 1950); Tex Att'y Gen. Op. No. C-439 (1965) at 3 ("The signer of a petition for a local option election on the sale of alcoholic beverages may not withdraw his signature from the petition after the 30-day time limit for filing the petition has expired."). The effect of a signature being timely withdrawn was that the signature was treated as if it had never appeared on the petition.[4] *See Tex. Power & Light*, 87 S.W.2d at 558. Subsection (a) of pre-amendment section 251.10 authorized the local election official to certify the number of qualified voters who signed the petition. *See* Act of May 26, 1983, 68th Leg., R.S., ch. 539, § 1, sec. 251.10, 1983 Tex. Gen. Laws 3138, 3138. Once a signature had been withdrawn there was no signature over which an election official could exercise any discretion. Your first question asserts that the signature withdrawal affidavits were timely filed in the instant case. *See* Request Letter, *supra* note 1, at 1. Assuming this was true, local election officials were required to disregard withdrawn signatures and could not count them if presented with a petition that was governed by chapter 251 as it existed prior to the 2003 amendments.

You next ask, in essence, if local election officials had the discretion to certify petition signatures on a petition page that did not bear the pre-amendment requirements mandated by former section 251.08 of the Alcoholic Beverage Code, when that petition was governed by the Code as it existed before the 2003 amendments. *See id.* at 2. Section 251.08, prior to the 2003 change in law, read:

> The petition for a local option election seeking to legalize the sale of alcoholic beverages of one or more of the various types and alcoholic contents shall be headed "Petition for Local Option Election to Legalize." The petition shall contain a statement just ahead of the signatures of the petitioners . . . . The petition must clearly state the issue to be voted on, and that issue must be one of those issues set out in Section 251.14 of this Code.

Act of May 6, 1977, 65th Leg., R.S., ch. 194, § 251.08, 1977 Tex. Gen. Laws 391, 547. Though you give no specifics, your question suggests that the signatures at issue appeared on the back side of a local option election petition signature sheet and that the back side lacked section 251.08's specified elements. *See* Request Letter, *supra* note 1, at 2.

Before we can address your second question, we must first determine whether or not the elements had to appear only on the first page of a local option election petition filed before the effective date of the Code's 2003 changes, or whether they had to appear on every page of the

---

[4]The Texas Legislature codified this construction of the common-law right in the Alcoholic Beverage Code in 2003. Section 251.10, as amended, now provides for withdrawal and reads, "The withdrawal of a signature nullifies the signature on the petition and places the signer in the same position as if the signer had not signed the petition." Act of May 22, 2003, 78th Leg., R.S., ch. 1047, § 7, 2003 Tex. Gen. Laws 3007, 3009 (adding section 251.10(f)). Section 251.10(f) is based on an Election Code provision that the legislature adopted in 1993. *See* Act of May 28, 1993, 73d Leg., R.S., ch. 728, § 83, 1993 Tex. Gen. Laws 2845, 2860, *codified at* TEX. ELEC. CODE ANN. § 277.0022 (Vernon 2003); *see also* HOUSE COMM. ON LICENSING AND ADMIN. PROCEDURES, BILL ANALYSIS, Tex. H.B. 1199, 78th Leg., R.S. (2003) ("Comparison of Original to Substitute" - "Copies those provisions of the Election Code relating to the requirements . . . for a withdrawal of signature by affidavit.").

petition. The pre-amendment language of section 251.08 is straightforward: "The *petition* . . . shall be headed . . . . The *petition* shall contain a statement . . . . The *petition* must clearly state the issue . . . ." Act of May 6, 1977, 65th Leg., R.S., ch. 194, § 251.08, 1977 Tex. Gen. Laws 391, 547 (emphasis added). By its plain language, this version of section 251.08 tied its elements to the petition as a single document, not to individual pages.

We find further support for this conclusion in the guiding principles of statutory construction. The doctrine of *inclusio unius est exclusio alterius* is applicable here. That is, when the legislature has used a term in one section of a statute and excluded it in another, a court will not imply the term where it has been excluded. *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex. 2001) (citing *Smith v. Baldwin*, 611 S.W.2d 611, 616 (Tex.1980)). *But see Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 895 (Tex. 2000) (this doctrine merely establishes a presumption that can be rebutted by discernible legislative intent of a different result). Prior to the 2003 changes in the law, section 251.06 of the Code, which spells out the generic petition requirements, said that "*[e]ach page* of a petition shall bear the same date and serial number and the actual seal of the county clerk rather than a facsimile of that seal." TEX. ALCO. BEV. CODE ANN. § 251.06 (Vernon 1995) (emphasis added). Similarly, section 251.09, which governs petition copies, also required before the 2003 amendments that "[e]ach copy [of the petition] shall bear the date, number, and seal on *each page* as required by the original petition." *Id.* § 251.09(a) (emphasis added). By contrast, the words "each page" were absent from section 251.08, and "petition" is used exclusively instead. *See* Act of May 6, 1977, 65th Leg., R.S., ch. 194, § 251.08, 1977 Tex. Gen. Laws 391, 547. As the legislative history of this statute is silent on the legislature's intent, the doctrine's presumption stands, and we therefore construe the Code's pre-amendment section 251.08 to have required its elements to appear only on the first page of a petition. These elements did not need to be repeated on the petition's other pages.[5]

Having concluded that section 251.08's elements had to appear only on the first page of a petition, we now turn to the heart of your second question, which concerns the discretionary powers of local option election officials to accept or reject signatures that appeared on pages of a petition that did not bear section 251.08's elements. To answer this question, we must examine the section of chapter 251 that controls the petition verification process, section 251.10. It is necessary to determine if this section prior to amendment in 2003 was mandatory or directory, that is, whether it required strict compliance or only substantial compliance. *See Branaum v. Patrick*, 643 S.W.2d 745, 749-50 (Tex. App.–San Antonio 1982, no writ). In general, election laws are to be construed as directory in the absence of fraud or of provisions that are clearly mandatory. *See Stotler v. Fetzer*, 630 S.W.2d 782, 784 (Tex. App.–Houston [1st Dist.] 1982, writ dism'd). Case law and a past attorney general opinion have established that the Code's pre-amendment section 251.10 (the section applicable to the petition in question, *see* Act of May 26, 1983, 68th Leg., R.S., ch. 539, § 1, sec.

---

[5]This interpretation is consistent with other election laws that require similar elements to appear on each page of a special election petition but do so with express language to that effect. *See, e.g.*, TEX. LOC. GOV'T CODE ANN. § 231.106 (Vernon 1999) ("A petition for a local option [zoning] election must include a statement . . . located on each page of the petition preceding the space reserved for signatures . . . ."; TEX. OCC. CODE ANN. § 2001.652 (Vernon 2004) ("A petition . . . to legalize bingo under this chapter must have a statement . . . preceding the space reserved for signatures on each page . . . .").

251.10, 1983 Tex. Gen. Laws 3138, 3138) was mandatory. *See Hodges v. Thompson*, 932 S.W.2d 717, 720 (Tex. App.–Fort Worth 1996, no writ) (relying on Tex. Att'y Gen. Op. No. JM-501 (1986)).

In Texas Attorney General Opinion JM-501, this office considered an election official's discretion to reject signatures that met all but the sixth criterion of subsection (b) of section 251.10 of the Alcoholic Beverage Code, which required a voter's name to appear on a petition exactly as it appeared on the list of registered voters. *See* Tex. Att'y Gen. Op. No. JM-501 (1986) at 2. That opinion concluded that section 251.10's clear and unambiguous language made the six criteria mandatory rather than directory. *See id.* at 3. The *Hodges* court, faced with a similar situation, relied on JM-501 to reach the same result and further concluded that pre-amendment subsection (a) of 251.10 was mandatory as well. *See Hodges*, 932 S.W.2d at 720. Indeed, former section 251.10 required that a local option election official "shall certify to the commissioners court the number of qualified voters signing the petition," *see* Act of May 26, 1983, 68th Leg., R.S., ch. 539, § 1, sec. 251.10, 1983 Tex. Gen. Laws 3138, 3138, which led to the holding that a local election official must certify "*whatever* number of voters [that official] can 'count' under [251.10] subsection (b) to the commissioners court," *Hodges*, 932 S.W.2d at 720.

In the case of special elections, the exercise of a grant of authority to call an election "must be in strict conformity with the provisions of the legislative grant." *See West End Rural High Sch. Dist. v. Columbus Consol. Indep. Sch. Dist.*, 221 S.W.2d 777, 779 (Tex. 1949). In addition, this office has stated that there is nothing in the Alcoholic Beverage Code which suggests that a local election official has any discretion to waive mandatory provisions of the Code. *See* Tex. Att'y Gen. Op. No. JM-501 (1986) at 4. Accordingly, petitions subject to chapter 251 as it existed prior to that chapter's 2003 amendments were not required to bear 251.08's elements on each page. Furthermore, local election officials were required to count signatures that appeared on local option election petition pages if those pages otherwise complied with other pre-amendment chapter 251 provisions, unless the signatures were required to be rejected under section 251.10(b).[6]

---

[6]Compare this result with *Alliance for a Better Downtown Millbrae v. Wade*, 133 Cal. Rptr. 2d 249, 253-54 (Cal. Ct. App. 2003) (even though the court primarily relied on the definition of "page" as a whole sheet of paper to support its holding that signatures on the back side of a petition signature sheet were valid, it also admitted that the authorizing statute only required substantial compliance); *Cavallaro v. Schimel*, 755 N.Y.S.2d 809, 811-12 (N.Y. Gen. Term 2003) (signatures on the back side of petition signature sheet were held to be valid because petitions needed only be in substantial compliance with statutory authority).

## S U M M A R Y

Prior to 2003 changes in the Alcoholic Beverage Code, Texas recognized the common-law right of signature withdrawal, and a timely filed affidavit of signature withdrawal from a local option election petition had the effect of erasing the petitioner's original signature. Local election officials, therefore, were required to disregard withdrawn signatures and could not count them. In addition, for local option election petitions governed by the pre-amendment Alcoholic Beverage Code, local election officials had to count signatures that appeared on pages that complied with pre-amendment chapter 251 provisions, unless the signatures had to be rejected under pre-amendment section 251.10(b).

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Daniel C. Bradford
Assistant Attorney General, Opinion Committee