Arthur M. and Margaret
ROSAS, Appellants,

v.

Leroy BURSEY, Marianna Thomas,
Burwell Thompson, J.T. Luther,
and Earl Wilson, Jr., Appellees.

No. 2-85-211-CV.

Court of Appeals of Texas,
Fort Worth.

Dec. 31, 1986.

Patrick J. Funiciello, Euless, for appellants.

Cantey, Hanger, Gooch, Munn & Collins, Ralph H. Duggins and Robert E. Aldrich, Jr., Fort Worth, for appellees.

Before FENDER, C.J., and JOE SPURLOCK, II and HILL, JJ.

## OPINION

FENDER, Chief Justice.

This is an appeal from the granting of a summary judgment and an attorneys' fee award for plaintiffs/appellees, Leroy Bursey, Marianna Thomas, Burwell Thompson, J.T. Luther and Earl Wilson, Jr. The trial court found that defendants/appellants, Arthur and Margaret Rosas, breached a settlement agreement between themselves and appellees. The trial court also found that certain deed restrictions involving the Rosas' property are valid and enforceable. The court also: 1) permanently enjoined the Rosases from improving their property; 2) ordered them to remove the improvements from the property; and 3) ordered that they were liable for $22,000.00 in attorneys' fees and $2,500.00 and $5,000.00 in attorneys' fees in case of appeal.

We affirm.

In October of 1982, appellants bought a vacant lot in the Ridglea subdivision of Forth Worth. About the same time, they bought a house for $3,000.00 with a plan of moving the house onto the vacant lot and renovating it. In September of 1983, appellee Bursey first learned of appellants' plan when, in apparent preparation for the move, Mr. Rosas cut down some trees on Bursey's lot. Bursey, along with appellees Thomas and Thompson, live in homes close to the Rosas' lot.

Bursey gave appellants a copy of the deed restrictions for the subdivision and advised them that he and the other neighbors would seek injunctive relief, if necessary, to require them to submit plans for their project. The deed restrictions require that plans for construction be submitted for approval to J.T. Luther and Earl Wilson, Jr., dedicators of the property, before any construction begins. In December of 1983, before they had submitted plans in compliance with the deed restrictions, appellants hired H.D. Snow, a house mover and foundation contractor, to move the house onto the lot.

In January of 1984, appellees Bursey, Thomas and Thompson filed a lawsuit seeking a declaratory judgment that the restriction requiring prior approval of plans was valid and requesting that an injunction issue requiring the Rosases to submit a sketch and plan before moving their house. Six months later, appellants submitted to Luther and Wilson a plot plan and detailed specification prepared by an architect they had hired. Appellants' plans were promptly reviewed by Wilson and Luther and were approved without change. The approval of the plan was conditioned upon appellants' agreement to complete the external improvements within a reasonable amount of time. A written settlement agreement was entered into between appellants and appellees, in September of 1984 but was not actually signed by the appellants until November, 1984.

Appellants' testimony from a March 28, 1985 temporary injunction hearing to enforce the settlement agreement (on the ground that the appellants failed to complete the plans within the agreed time limit) is as follows:

Q. [ATTORNEY FOR APPELLEES]: In this agreement there is a paragraph or a part of Page 2 that says, "Whereas, counsel for Defendants," which is your counsel, Mr. Funiciello, "with the prior approval of Defendants agreed on January 11th, 1984 with counsel for Plaintiff," which is my partner, Ralph

Duggins, "that the house would not be moved on the lot, no improvements be added or made to the lot until such time as Defendants are submitted and receive approval of the building plans."

That said agreement we talked about five minutes ago, wasn't it?

A. [MR. ROSAS]: Yes.

Q. It goes on to recite that in July you all submitted some plans. The next paragraph says, "Whereas, J.T. Luther, Jr. and Earl Wilson, Jr. have in fact reviewed the plans and have agreed to approve the same," and then it is underlined, "provided that all external improvements contemplated and illustrated in the plans shall have been properly completed by Defendants, their agents or representatives within 90 days from the date on which the Defendants move the house on the lot."

Do you agree with me that that's what that paragraph says?

A. Yes.

. . . .

Q. Now you signed that agreement, did you not?

A. Yes.

. . . .

Q. Will you agree with me that you moved the house onto the lot on Winthrop on November 29th of 1984?

A. I think it was November 28th.

Q. If it was November the 28th, then necessarily 90 days ran on February 26th, did it not?

A. I believe it is, sir. I haven't counted the days.

. . . .

Q. And the house certainly wasn't completed on February 26th and 27th, was it?

A. Right.

When appellants' house was not completed within the 90-day period, appellees allowed a few more days for completion of the house. When this extension was not met, appellees amended their declaratory judgment suit and requested that a temporary restraining order be issued preventing appellants from further improving the lot and house. They also asked that a permanent mandatory injunction be ordered on final trial of the cause requiring the Rosases to remove the house from the lot. Appellants filed an answer and a counterclaim [1] to the petition for declaratory judgment and injunction.

A hearing on the request for temporary injunction was held on March 28, 1985. At that time, the trial court granted a temporary injunction, ruling that "there has been a breach of the contract [by the Rosases]." Following the granting of the temporary injunction the trial court advised all sides of the requirement of setting a preferential trial date. Several days later, the trial court scheduled the trial for September 3. Later, a preferential setting was obtained by counsel for appellees for a trial date of July 29, 1985.

On July 5, appellees filed their motion for summary judgment. In their motion, appellees contended: 1) that there existed deed restrictions which required property owners "to obtain written approval of a preliminary sketch and detailed plans prepared by an architect before beginning any building ... or improvement"; 2) that appellants had actual notice of the restrictions at the date of the purchase of the lot since they admitted that they were given a copy of the restrictions by their real estate agent at the closing; 3) that appellee Bursey phoned and wrote appellants in August of 1983 advising them of the requirement of plan approval and enclosing a complete copy of the restrictions; 4) that appellants' plans for exterior improvements were approved as submitted; 5) that a settlement agreement was signed by appellants and appellees on November 19, 1984, in which it was agreed that the exterior improvements would be fully and properly completed within 90 days from the date the home was placed on the lot (the settlement agreement

---

**1.** This appeal does not involve the one million dollar counterclaim for emotional trauma, mental pain and anguish; however, the record re-

flects that summary judgment was granted in favor of appellees concerning the counterclaim.

was attached to the motion as Exhibit A); 6) that in the agreement, appellants acknowledged and agreed that "upon *any failure* to satisfy the covenants that [appellees] shall be entitled to bring legal action against [the Rosases] ... *for injunctive relief* to (a) force completion of the exterior improvements and/or (b) *force removal of the House* and any unfinished external improvements"; 7) that the agreement provided that if appellants breached their promises under the settlement agreement, they agreed they would be jointly and severally responsible and liable to appellees for all attorneys' fees, costs of court and other expenses which may be incurred by appellees in pursuing any legal remedies afforded them; 8) that the problems and delay with the foundation were caused solely by the Rosases because (a) their architect "over-designed" the foundation; (b) they hired a contractor to redesign the foundation after 30 of the 90 days had already run even though the new design was quickly accepted and approved by appellees; and (c) on February 27, 1985, at the expiration of 90 days, the external improvements were nowhere near complete; 9) that in March, 1985, appellees sued for injunctive relief; 10) that appellants had actual and constructive knowledge of the restrictions on the lot and that they voluntarily executed a settlement contract confirming that those restrictions were valid and enforceable; and 11) that appellees are entitled to an injunction forcing appellants to remove all the improvements off of the lot and that they are also entitled to all of their attorneys' fees, court costs and other expenses.

Appellees asked for summary judgment on the declaratory judgment and breach of contract causes of action, and for at least $30,000.00 in damages and all attorneys' fees and court costs.

Appellants responded to the motion for summary judgment contending: 1) that the affidavit of Snow[2] which was attached to the motion for summary judgment should not be given credence since H.D. Snow knew of the existence of the plans alluded to in his affidavit even though he said that he did not; 2) that any and all references to the deposition of Arthur Rosas should not be considered because the objections to his testimony were to be made at the time of the trial and because the deposition was not sent to the office of appellants' counsel for signature of Rosas; 3) that a full reading of the transcript of the temporary injunction hearing shows that the movants took much of the testimony out of context; 4) that all letters and excerpts therefrom quoted in the motion for summary judgment were taken out of context, are hearsay and are inadmissible to support a summary judgment because no predicates were laid for the admission of each letter; 5) that appellees' entire summary judgment motion is a recital of opinions from appellees' counsel and "the conclusion"[3] is one upon which reasonable minds might differ; 6) that there are genuine issues of material fact which have been raised because: a) the affidavit of David Bloxom (one of appellants' contractors) attached to the response, clearly shows that appellee Bursey is prejudiced against appellants because they are Hispanic since Bloxom quotes Bursey as saying "those people are all alike; they're nasty and they live like rats...."; b) appellee J.T. Luther, a dedicator of the encumbered lots, has never previously enforced the deed restrictions; c) J.T. Luther has never imposed such an extensive prerequisite for anyone seeking approval of building plans as he has in this instance; d) J.T. Luther does not recall whether anyone else violated the restrictions which are the subject of this suit and that he does not keep any systematic records of requests for structures or alterations; e) appellees required a preliminary sketch to be submitted and, although this was done, J.T. Luther never saw the sketch; f) the building design requirements

---

**2.** The Snow affidavit basically states that appellees did not interfere with appellants' construction. Snow stated that on one occasion, Bursey told him the foundation was not in accordance with appellants' plans. He stated that he did not know plans existed.

**3.** It is not clear what appellants are arguing here.

were more onerous than those stipulated in the restrictions in that other lots in the subdivision had obviously not been held to strict adherence to any approval or plans through J.T. Luther or Earl Wilson; g) if appellees had not stopped the work on appellants' project in March, the work could have been completed in ten to twelve working days; h) appellants did not intentionally breach the agreement because the affidavit of Bloxom indicates that the weather and delay in obtaining building materials caused most of the delays; and i) since the deed restrictions have never been enforced, they should be reduced to a meaningless scrap of paper. Appellants also contend that there is a fact issue as to whether appellants believe the deed restrictions were valid.

The trial court signed an interlocutory judgment on July 24, 1985, granting appellees' motion for summary judgment, but leaving the issue as to the amount of attorneys' fees open until a hearing could be held on that issue. On August 20, 1985, after this hearing on attorneys' fees, the trial court granted summary judgment: 1) concerning the declaratory judgment action and held that the deed restrictions were valid and enforceable; and 2) concerning the breach of contract cause of action and ordered that the relief agreed to in the settlement agreement (the permanent injunction preventing appellants from improving their lot and the injunctive relief requiring appellants to remove all improvements from the lot) be granted. The trial court further granted relief in the form of $22,000.00 in attorneys' fees and $2,500.00 and $5,000.00 in attorneys' fees in the event of appeals. The $30,000.00 in damages requested by appellees was not awarded to them.

In their first point of error, appellants contend that the trial court erred in granting a final summary judgment under TEX. R.CIV.P. 166–A in that there existed a "multiplicity" of genuine issues as to material facts which should have prevented summary judgment.

In their argument under point of error one, appellants first contend that the affi-davit of David Bloxom showed the impossibility of completing appellants' project due to circumstances beyond the control of appellants. They contend that inclement weather, soft ground, supply delays, and the desires of appellee Bursey to alter the plans caused the delay in performance.

In their response to the motion for summary judgment, appellants raised the issue of whether the delay in construction was due to the weather and supply delays. However, whether this is what caused the delays need not be determined by a jury because, even if the delays were caused by weather and supply problems, such problems do not excuse appellants' failure to perform the contract within the 90–day period. *See Griffin v. Holiday Inns of America*, 452 S.W.2d 517, 523 (Tex.Civ. App.—Austin 1970, no writ) (weather, soil conditions, and equipment failure honestly explain but do not legally excuse the consequences of appellants' failure to substantially perform the contract); *Wright v. Meyer*, 25 S.W. 1122, 1124 (Tex.Civ.App. 1894, no writ) (the fact that it is impossible to secure materials of the kind required by the contract does not excuse performance unless the impossibility existed when the contract was executed).

As for whether Bursey caused the delay in the completion of the construction, this issue was not raised in appellants' response to the motion for summary judgment. We recognize that an affidavit is an appropriate means of responding to a motion for summary judgment. *See Engel v. Pettit*, 713 S.W.2d 770 at 772 (Tex.App.— Houston [14th Dist.], July 3, 1986); TEX.R. CIV.P. 166–A. A review of David Bloxom's affidavit, which was attached to appellants' response, does not, however, sufficiently raise a question of fact as to whether appellee Bursey's frequent contracts with Bloxom delayed the project. The affidavit clearly attributes the construction delays to the weather and supply problems, rather than to Bursey's involvement. This issue, therefore, was not presented to the trial court and cannot be raised for the first time on appeal. *See TEX.R.CIV.P. 166–A.

■ Appellants next assert that "[t]he record is replete with situations where reasonable minds might differ on interpretations of the alleged agreement of the parties, which were controverted and brought to the Lower Court's attention in Appellants' Response to Motion for Summary Judgment...." Appellants' argument on this contention ends there. Appellants do not tell us which part of the agreement is in controversy. A review of the response sheds no light on what appellants are arguing. This contention is overruled.

Appellants next contend that the trial court ignored the controverted points and substituted its own judgment for that of the jury, particularly as it related to Bursey's interference and the factor involving the weather. This contention has already been addressed above and it is overruled.

■ Appellants next claim that there are material issues of fact for the jury to decide. The first issue appellants contend was raised was whether Bursey altered the terms of the agreement when he sought to change the garage door, windows, and eaves of the Rosas' house. As we stated earlier, no mention was made in appellants' response concerning Bursey's interference. Neither was it sufficiently addressed in Bloxom's affidavit to raise a fact issue. Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal. *See* TEX.R. CIV.P. 166–A. Therefore, this contention is overruled.

■ Appellants next argue that an issue was raised whether Bursey's interference affected the performance of the agreement. Appellants contend that Bursey's statement that "they [the Rosases] live like rats and they don't belong in our neighborhood" showed his intent to interfere. The question of whether Bursey was prejudiced was raised in the response to the motion for summary judgment. However, the motive with which a party enforces a legal right is irrelevant. *See Dealey v. Dallas County Junior College District,* 434 S.W.2d 724, 726 (Tex.Civ.App.—Waco 1968,

writ ref'd n.r.e.). This contention and appellants' first point of error are overruled.

In their second point of error appellants contend that the trial court erred in finding that appellees' summary judgment evidence was sufficient in form and content to support the trial court's final judgment.

Appellants maintain that Arthur Rosas' deposition was inadmissible because it was not submitted to Rosas' attorney for his review and signature. *See* TEX.R.CIV.P. 72. Appellants also contend that the motion for summary judgment quoted letters from both attorneys which were inadmissible because they were hearsay and improper summary judgment evidence. It is also contended that the affidavit of H.D. Snow, one of appellants' contractors, was inadmissible because it was from an "interested witness."

■ Appellants also contend for the first time on appeal that "unverified documents" were attached to the motion. Although appellants do not specify which unverified documents they are speaking of, we presume they mean the settlement agreement. However, this defect in the verification cannot be raised for the first time on appeal. *See Wexler v. Gibraltar Savings Association,* 439 S.W.2d 378, 380 (Tex.Civ.App.—Houston [14th Dist.] 1969, no writ); TEX.R.CIV.P. 166–A(e).

■ Without opining on the admissibility of the letters from the attorneys to the trial judge and to each other or the affidavit and deposition of Arthur Rosas, we hold, without considering these documents, that there was sufficient evidence in the settlement agreement and the temporary injunction hearing statement of facts, both of which were before the trial court, to support the trial court's judgment. Our reasons for this conclusion will be discussed in detail below.

The settlement agreement, signed by appellants and appellees, was attached to the motion for summary judgment. The settlement agreement states that the construction will be completed within 90 days from the date on which appellants move the house on the lot. The settlement agree-

ment further states that if appellants fail to satisfy the 90–day requirement, then appellees "shall be entitled to bring legal action ... for injunctive relief to ... force removal of the House and any unfinished external improvements." The agreement further states that appellees would be jointly and severally liable to appellees for all attorneys' fees, costs of court and other expenses incurred by appellees in pursuing any legal remedies afforded them under the contract or otherwise.

The record from the temporary injunction hearing of March 28, 1985 shows that Mr. Rosas signed the agreement and that the house was not completed 90 days after the house was moved on the lot. Rosas also testified that he agreed in the settlement agreement "to pay any costs, attorneys' fees, any kind of costs that [appellees] might have if they had to institute any legal proceedings to take care of [the] problem."

■ There was also sufficient evidence to support the trial court's finding, in granting the summary judgment concerning the declaratory judgment action, that the deed restrictions were enforceable. The parties agreed, in the settlement agreement, that appellants' lot was "lawfully encumbered by deed restrictions filed of record...." Appellants presented no evidence raising a material issue as to the validity of the restrictions.

We find there was sufficient evidence to support the judgment of the trial court. Appellants' second point of error is overruled.

In their third point of error appellants contend that the trial court erred in awarding $22,000.00 for attorneys' fees to appellees and the further sums of $5,000.00 and $2,500.00 if appellants appealed. Appellants complain that these amounts are so grossly excessive in a suit of this nature as to constitute an abuse of discretion. Appellants also contend that there is no admissible evidence to sustain such an award.

In the argument under this point, appellants first assert that appellees did not provide any credible evidence at the sum-

mary judgment hearing on attorneys' fees on July 18, 1985 which would substantiate their claim for their fees. Appellants claim that appellees had no affidavits, time sheets or other "verified" documents supporting their claim for attorneys' fees and that oral testimony was inadmissible concerning attorneys' fees. Appellants also complain that the oral testimony of appellees' attorney, Robert Aldrich, concerning work done and attorneys' fees earned did no more than raise an issue as to whether the attorneys' fees were reasonable.

We note that appellants are under the impression that the trial court granted summary judgment concerning the amount of the attorneys' fees. However, the final judgment clearly shows that the court signed an interlocutory judgment granting appellees' motion for summary judgment concerning appellants' liability for appellees' attorneys' fees but leaving the issue as to the amount of the award open until a bench trial on the same could be had. This partial summary judgment was allowable under TEX.R.CIV.P. 166–A. Both sides had an opportunity to present evidence on the issue. The oral evidence from attorney Aldrich was admissible at the bench trial.

■ Allowance of attorneys' fees rests in the sound discretion of the trial court, and its judgment will not be reversed without a showing of abuse of discretion. *Reintsma v. Greater Austin Apt. Maintenance*, 549 S.W.2d 434, 437 (Tex.Civ.App.—Austin 1977, writ dism'd). The elements most frequently considered by the courts in determining what amount would be reasonable as attorneys' fees are: 1) The nature of the case, its difficulties, complexities and importance, and the nature of the services required to be rendered by the attorney, *Tuthill v. Southwestern Public Service Co.*, 614 S.W.2d 205, 212–13 (Tex.Civ.App. —Amarillo 1981, writ ref'd n.r.e.); 2) the amount of money involved, the client's interest at stake, and the amount of time devoted by the attorney and the benefit derived by the client, *id;* and 3) the time necessarily spent by the attorney, the responsibility imposed on the counsel, and the skill and experience reasonably needed to

perform the service. *Id.* Aldrich's testimony concerning these factors was competent evidence concerning the amount of attorneys' fees. *See Boysen v. Security Lumber Co., Inc.,* 531 S.W.2d 454, 455 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ).

▮ Aldrich testified at the bench trial on the amount of attorneys' fees. He went through each of these factors listed above and stated that reasonable attorneys' fees under the circumstances in this case is $25,364.00.[4] He stated that he and his partner billed at an hourly rate of either $100.00 or $125.00 an hour and that the billing amount varied. On cross-examination he stated that the hours that the law clerks worked on the case were not included in the attorneys' fee bill. He stated that he was claiming attorneys' fees under TEX.REV.CIV. STAT.ANN. art. 2226 (Vernon Supp.1985)[5] because there was a provision for attorneys' fees in the settlement agreement.

Although Aldrich was cross-examined by appellants' attorney, appellants offered no evidence that the attorneys' fees were unreasonable. After reviewing the record, we hold that the award of attorneys' fees was not unreasonable. *See Boysen,* 531 S.W.2d at 457.

Appellants next contend that the award of the $22,000.00, and the additional award of $5,000.00 and $2,500.00 if there was an appeal, allows appellees to execute their judgment for attorneys' fees while at the same time accumulating additional fees while appellants exercise their right to appeal and that this made the entire action "a punitive event" against appellants. Appellants claim that this denies them due process of the laws under Art. I, sec. 19 of the Texas Constitution. Appellants state that they do not cite authority on this point because doing so is "unnecessary in the presence of fundamental error...."

▮ We find that it is discretionary with the trial court whether to award provi-

sional attorneys' fees in case of appeal. *See Paulus v. Lawyers Sur. Corp.,* 625 S.W.2d 843, 846 (Tex.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). Further, in the settlement agreement, the appellants agreed to be liable to appellees "for all attorney's fees, costs of court and other expenses which may be incurred by [appellees] in pursuing any legal remedies afforded them" under the contract "or otherwise." Appellants' contention and their third point of error are overruled.

In their fourth point of error, appellants allege that the trial court erred in finding that the deed restrictions were reasonable and enforceable in law and equity.

▮ First of all, we note that the deed restrictions required appellants to submit a plan to J.T. Luther and Earl Wilson concerning their proposed construction. This was done. The plans were approved without change. Because the plans have already been submitted and approved, the question of their validity and enforceability at this point is moot.

Second, we note that the settlement agreement signed by the appellants states that "the Lot was lawfully encumbered by deed restrictions filed of record by A.C. Luther ... on or about December 6, 1949 and recorded in Book 388–G, Page 14 of the Plat Records of Tarrant County, Texas...." Therefore, appellants have signed an agreement stating in effect, that the deed restrictions are enforceable. We will, however, address appellants' contention.

Appellants contend that the deed restrictions were "not enforced over a 36 year period" with the exception of the enforcement concerning appellants. Appellants cite to the deposition of Luther at page 24 in support of their contention. However, a review of Luther's comment, in context, shows that appellants are incorrect. The deposition reveals the following:

Q. [BY APPELLANTS' ATTORNEY]: But if they added a room or add-

---

4. The amount awarded was reduced by the trial court to $22,000.00.

5. *See* Act of June 6, 1979, ch. 314, sec. 1, 1979 Tex.Gen.Laws 718, 718, *repealed by* Act of June

16, 1985, ch. 959, sec. 9, 1985 Tex.Gen.Laws 3242, 3322, *recodified at* TEX.CIV.PRAC. & REM.CODE ANN. sec. 38.002 (Vernon 1986).

ed a garage or carport, wouldn't they also have to seek your approval according to page two of those restrictions?

A. [LUTHER]: They should.

Q. And is it your recollection that nobody ever did submit plans to you?

A. Some have.

Q. But you don't know who they are?

A. No. I don't keep them.

Q. So, if there are alterations out there, then you have no record of approving them, is that right?

A. If you came by and brought a plan that you wanted to add something to, we would sit down and look at it. If it met the restrictions, and I thought it looked all right with the neighbors and we approved it, you go on your own way and build it. That would be the last of it.

Q. Do you have any idea whether or not anybody submitted the plans like the Rosas did for change in structure or an addition?

A. I'm sure they did.

Appellants' contention is overruled.

■ Appellants next assert that the restrictions are not enforceable because Bursey is not required to comply with the same restrictions in the building of some duplexes. The record reveals that Bursey testified at the temporary injunction hearing that his duplex property is not covered by the deed restrictions. This statement was not controverted by appellants. This contention is overruled.

■ Appellants next allege that J.T. Luther said, in his deposition, that he had never before participated in such an agreement as that which is the subject of this suit. We find that even if no contractual agreement had ever been entered into before, this does not show that the deed restrictions are unenforceable. It merely shows that no one has entered into a contract to enforce them before.

■ Appellants next contend that it is essential to an action to enforce a restrictive covenant that there be prima facie proof of the implementation of a general plan or scheme which has been established by the covenants. We find that this proof was not necessary because the covenants run with the land at law. *See Collum v. Neuhoff,* 507 S.W.2d 920, 923 (Tex.Civ.App. —Dallas 1974, no writ). Appellants' own deed recites that it is accepted subject to any and all restrictions of record affecting the property. *See id.* This contention is overruled.

■ Appellants assert that the deed restrictions are unenforceable because J.T. Luther did not keep systematic records of requests by landowners for alterations or construction. Appellants cite no authority for this contention and it is overruled.

■ Appellants next allege that the trier of facts should have determined whether or not the restrictions as applied to appellants were more onerous than those applied to other property owners. Appellants' summary judgment proof, J.T. Luther's deposition, indicates that the restrictions applied in the same manner to all property owners subject to the restrictions. Appellants' fourth point of error is overruled.

■ In their fifth point of error, appellants assert that the trial court abused its discretion in failing to follow procedural rules for special settings, which denied appellants procedural and substantive due process. Appellants first complain that the trial court granted a preferential setting which caused "manifest hardship" for appellants.

Appellants, in their brief, state that on April 29, 1985, Pat Wells, District Court Clerk, sent a note along with a schedule of open trial dates and asked for a letter in return in which appellants were to request a specific trial date. Appellants argue that before a specific week was requested, the above cause was specially set for the week of July 29, 1985.

Appellants maintain that the preferential setting caused them manifest hardship and that the trial court violated rule I g. of the Rules of Practice in the District Courts of Tarrant County, Texas. This rule states:

g. Special or preferential settings will not be looked upon with favor and in no event, except in those cases entitled

by law to a preferential setting, will such a setting be granted unless the case has been on file for at least twelve (12) months and unless it is shown that manifest hardship will result if a preferential setting is not granted.

Local Rules of Prac. in the Dist. Courts of Tarrant County, Texas I g. (1979).

We find that this rule comes into play when a party is complaining of the *denial* of a preferential setting. *Cf. id.* Here, the rule does not apply because a preferential setting was *granted. Cf. id.* We see no harm in this preferential setting, especially considering the fact that appellants, admittedly, requested the clerk to set the above cause for jury trial at the earliest opportunity.

Appellants next complain that the trial court failed to follow the appropriate procedural rules in that rule VII concerning Motion Practice in the Rules of Practice in the District Courts of Tarrant County was not followed. Rule VII is as follows:

> No motion or special exception will be set for hearing until the moving party shall first communicate with opposing counsel to determine whether a contemplated motion or special exception will be opposed. If the motion or special exception will not be opposed the moving party shall submit a proposed order signed by counsel for all parties indicating approval of same.

Local Rules of Prac. in the Dist. Courts of Tarrant County, Texas VII (1979).

■ Appellants contend that appellees failed to "file a motion" and "set up a conference" with them concerning appellees' special exceptions to appellants' counterclaim. Inasmuch as appellants do not appeal from the granting of the summary judgment concerning their counterclaim, this point of error is overruled.

■ Appellants next claim that they were not served with two documents. Appellants assert that they became aware of the documents only after reviewing the clerk's file after the summary judgment hearing. One such document was entitled "Last Ditch Effort To Create A Fact Issue As To Dr. Bursey (Affidavit Of David Bloxom) Should Be Disregarded." This document, filed by appellees on July 18, 1985, challenged the form and substance of the affidavit of David Bloxom. Appellees state in their brief that this document was personally delivered to appellants' counsel at the hearing on the Motion for Summary Judgment on July 18, 1985. The document itself also states that it was personally delivered. The document had been filed by appellees the day after appellants' response and Bloxom's affidavit were filed by appellants.

While it is true that TEX.R.CIV.P. 72 and 73 require that all motions and pleadings be delivered to opposing counsel, *see* TEX.R.CIV.P. 72, 73, and it is disputed whether counsel for appellants was served with this document, we find that appellants have not shown that the trial court, in reliance on the "Last Ditch" document, struck the affidavit of Bloxom and refused to consider it. Appellants have not shown that the trial court considered the "Last Ditch" document at all. Therefore, this contention is overruled.

■ Appellants also complain that they were never served with an affidavit by appellees' attorney entitled "Affidavit In Support Of Request For Attorney's Fees." This document is not contained in the record; however, appellants' attorney states in his affidavit filed in support of appellants' motion for new trial that the document was filed July 24, 1985, six days after the summary judgment hearing. On August 15, 1985, a bench trial was held on the amount of attorneys' fees to be paid. The testimony given by appellees' attorneys at this bench trial supports the court's award. Appellants were present at the proceeding to cross-examine appellees' attorneys on their testimony. In light of these facts, appellants have not shown the harm in not receiving a copy of the affidavit. Appellants' contention is overruled.

■ Appellants next assert that a motion to shorten time for appellants to respond to the motion for summary judgment was filed by appellees' attorneys and grant-

ed by the trial court on July 5, 1985, without notice to appellants. Appellants contend that this is further evidence of denial of procedural due process and a blatant disregard for TEX.R.CIV.P. 72, and rule VII of the Rules of Practice in the District Courts of Tarrant County, Texas.

Appellants are apparently arguing that they did not have enough time to respond to the motion for summary judgment.

Appellants' attorney acknowledges, in the motion for continuance, that he received notice of the granting of the motion to shorten time when he returned to his office on July 8, 1985 and saw the motion and order granting it. The trial judge, in granting the motion, had set the summary judgment hearing for July 18, 1985.

Appellants filed a motion for continuance on July 10, 1985, contending, among other things, that because of the granting of the motion to shorten time, "it is not likely that a proper response can be prepared when depositions and other discovery will not be completed...." However, as we stated earlier, appellants did not request a hearing on the motion for continuance and no ruling was obtained. Appellants also failed to file an affidavit in accordance with rule 166–A(f) apprising the trial court of the specific reasons why appellants were unable to present facts in opposition to the motion for summary judgment. Further, the response to the motion for summary judgment does not contain a statement that appellants were harmed by the granting of the motion to shorten time. Appellants' contention and their fifth point of error are overruled.

The judgment is affirmed.