**Paul RAGSDALE, Appellant,**

v.

**PROGRESSIVE VOTERS LEAGUE, Appellee.**

No. 05–88–01508–CV.

Court of Appeals of Texas, Dallas.

May 10, 1990.

Rehearing Denied June 14, 1990.

John E. Collins and Jerry L. Hughes, Dallas, for appellant.

Donald W. Hicks, Dallas, for appellee.

Before McCLUNG, THOMAS and WHITTINGTON, JJ.

## OPINION

WHITTINGTON, Justice.

This is an appeal by Paul Ragsdale[1] from a judgment in his favor against the Dallas County Democratic Progressive Voters League (PVL) for actual damages in the amount of $1 and attorneys' fees in the amount of $150, in a suit for alleged violations of sections 251.002(f)(2) and 251.002(g) of the Texas Election Code (Code).[2] In five points of error, Ragsdale contends that the trial court erred in entering its judgment of September 22, 1986: (1) because as a matter of law the undisputed evidence showed that he was entitled to a judgment; (2) because as a matter of law the trial court did not have discretion to determine the amount of damages and attorneys' fees; (3) because as a matter of law he proved his damages; (4) because the finding of attorneys' fees in the amount of $150 is against the great weight and preponderance of the evidence; and (5) because the judgment does not award him

---

1. This is the second time this cause has been before this Court. *See Ragsdale v. Progressive Voters League,* 743 S.W.2d 338 (Tex.App.—Dallas 1987, no writ).

2. Chapter 251 of the Election Code was amended by the legislature in 1987. Now see Tex.Elec.

Code Ann. § 253.031(b) (Vernon Supp.1990). The statutes referenced in this opinion control the disposition of this case. All references hereinafter will be to sections 251.002(f)(2), 251.002(g) and 251.008(a).

attorneys' fees as required by the Texas Election Code and the uncontroverted evidence. For reasons stated below, we reverse the trial court's judgment and we render judgment in part and remand in part for further proceedings in accordance with this opinion.

## FACTS

On April 30, 1986, Ragsdale filed suit against PVL and its officers alleging that PVL violated sections 251.002(f)(2) and 251.002(g) of the Code [3] by failing to file a designation of campaign treasurer thirty days prior to the election primary and by engaging unlawfully in various campaign activities prior to filing a designation of campaign treasurer. Ragsdale sought injunctive relief as well as damages and attorneys' fees under section 251.008(a) of the Code. The trial court granted a temporary restraining order on the day the suit was filed and set a date for the hearing regarding the request for injunctive relief.

On May 2, 1986, the trial court heard argument on Ragsdale's request for permanent injunction. Ragsdale testified that at the time the suit was filed, he was a State Representative for District 110 in Dallas County, Texas. He had held that office since January 1973, and was a candidate for reelection in the 1986 elections. His name appeared on the ballot in the Democratic Primary along with his opponents, Charles Rose and Fred Blair. Sometime prior to the 1986 Democratic Primary, Ragsdale observed that PVL was conducting political campaign activities and proceeded to investigate whether the organiza-

tion had complied with the provisions of the Code. Upon discovering that PVL had not filed a designation of campaign treasurer with the Secretary of State, Ragsdale brought this action.

John Wiley Price, Jesse Jones, and James Whitlow were officers of PVL at the time of the suit and were called as witnesses at the hearing. They testified, in substance, that PVL was formed in 1936 as an educational purpose group. Historically, PVL has sponsored activities that promote awareness of issues that affect minorities in the Dallas metropolitan area. In the past, PVL has encouraged minority participation in the electoral process and endorsed candidates for local and state-wide offices. In the 1986 Democratic Primary, PVL endorsed a number of candidates for local and state-wide offices, including Ragsdale's opponent, Charles Rose.[4] During 1986, PVL accepted contributions and made expenditures to promote the campaigns of candidates endorsed by the organization. Slate cards, voters guides, and other political advertisements were printed and distributed to inform citizens of PVL's endorsements for the primary. Price further testified that PVL did not file a designation of campaign treasurer until May 2, 1986.[5]

After hearing argument from both parties, the court concluded that PVL violated the terms of section 251.002(f)(2) and 251.002(g) of the Code.[6] PVL did not file its designation of campaign treasurer in a timely manner and conducted political activities prior to filing its designation. The

---

**3.** Section 251.002(f)(2) makes it unlawful for a political committee to "make a contribution or expenditure in support of or in opposition to a candidate for a state or district office in a primary or general election unless the committee's designation of campaign treasurer has been filed before the 30th day preceding the appropriate election day." Section 251.002(g) states that "[i]t shall be unlawful for any candidate, political committee, campaign treasurer, assistant campaign treasurer, or any other person to expend funds from any unlawful contributions."

**4.** Prior to 1986, Ragsdale received PVL's endorsement for the District 110 seat. Ragsdale also lost his bid for the District 110 seat in the 1986 Primary.

**5.** In order to conduct political activities in the 1986 Democratic Primary, PVL's designation of campaign treasurer should have been filed on or before April 3, 1986.

**6.** The trial court also concluded that: (1) PVL is a general purpose political committee as defined in section 251.001(17)(a); (2) PVL is a nonprofit corporation; and (3) the officers of PVL were not liable in their individual capacities. Plaintiff did not raise the issue of individual liability on appeal; therefore, we express no opinion regarding that portion of the trial court's judgment.

court also concluded that "as a matter of law [Ragsdale] suffered an immediate and irreparable injury by virtue of the statutory violations for which there is no adequate remedy at law since there is no property rights [sic] to the political office," and "as a matter of law the evidence as to civil damages was insufficient thus further depriving [Ragsdale] of any remedy at law." *See Ragsdale v. Progressive Voters League, 743 S.W.2d 338, 341 (Tex.App.— Dallas 1987). The court granted Ragsdale's motion for a permanent injunction for a period of thirty days from the date of PVL's filing of the campaign treasurer designation*[7] *and denied all other claims for relief. A final judgment was entered on October 3, 1986.*[8]

Ragsdale appealed the October 3, 1986 judgment, challenging the trial court's denial of recovery of monetary damages and attorneys' fees. He maintained that injunctive relief was the only issue before the court at the May 2, 1986 hearing; hence, the court's judgment denying damages and attorneys' fees was erroneous. Conversely, PVL maintained that the issues of damages and attorneys' fees were resolved against Ragsdale at the hearing because of insufficient evidence.[9]

In its December 11, 1987 opinion, this Court reversed and remanded that portion of the October 3, 1986 trial court judgment denying Ragsdale's suit for recovery of damages and reasonable attorneys' fees.

*See Ragsdale*, 743 S.W.2d at 345. Specifically, we held that:

> Ragsdale was denied the opportunity to present his proof on the issues of damages and attorneys' fees, and the conclusion by the trial court that his proof on these issues is "insufficient as a matter of law" cannot be sustained. It was reversible error for the trial court to deny Ragsdale a recovery on the issue of damages and attorney's fees prior to a trial on these issues.

*Ragsdale*, 743 S.W.2d at 345. On remand, a nonjury trial was held. All parties were present and stipulated that all evidence presented at the previous hearings would be submitted on the issues of damages and attorneys' fees. Ragsdale also presented additional evidence on the issue of attorneys' fees.

On September 22, 1988, the trial court entered a second judgment in favor of Ragsdale. The judgment reads as follows:

> After considering all the pleadings and documents of record and hearing testimony and argument of counsel, the Court finds that it has been vested with the discretion in awarding and determining the amount of such award of civil damages under the Texas Election Code. The Court further finds that the Plaintiff should be awarded civil damages in the nominal amount of One Dollar ($1.00) and that Defendant Progressive Voters League should pay that amount. The Court further finds that Plaintiff should

---

**7.** On May 6, 1986, John Wiley Price was charged with violation of the court's injunction order and subsequently held in contempt of court. In a habeas corpus proceeding, the Texas Supreme Court held that the contempt order was void and ordered that Price be discharged from custody. *See Ex parte Price*, 741 S.W.2d 366, 367 (Tex.1987).

**8.** The order granting the permanent injunction was signed by the trial judge on May 9, 1986. It contained the identical findings of fact and conclusions of law made from the bench in the announcement of May 2, 1986, but did *not* recite "all other relief is denied." Ragsdale appealed to this Court, which refused to hear the appeal for the reason that a final judgment had not been rendered or signed by the trial court. Ragsdale then filed a motion with the trial court to amend the May 9, 1986 judgment. On Octo-

ber 3, 1986, in response to Ragsdale's motion, the trial court signed a Judgment Nunc Pro Tunc amending the order of May 9, 1986.

**9.** PVL presented seven "points" in its brief in response to Ragsdale's appeal. The majority of these points attacked the trial court's judgment granting the Motion for Judgment Nunc Pro Tunc and the trial court's judgment granting the permanent injunction. This Court concluded that Ragsdale limited his appeal to the issue of damages and attorneys' fees. Further, this Court held that PVL failed to file a cost bond and, in light of Ragsdale's limited appeal, PVL had not properly preserved for appellate review a majority of the issues argued in its brief. Hence, this Court limited its opinion to the issues of damages and attorneys' fees. *See Ragsdale*, 743 S.W.2d at 342–44.

not recover any amount as civil damages from the individual Defendants. The Court heard and considered counsel's testimony regarding Plaintiff's attorney fees and finds that Defendant Progressive Voters League should also be required to pay Plaintiff's attorney fees in the amount of One Hundred and Fifty Dollars ($150.00) and that no individual Defendant should pay Plaintiff's attorney fees.

In response to the trial court's foregoing judgment of September 22, 1988, Ragsdale again appealed the cause to this Court. PVL has filed no appeal.

## ISSUES ON APPEAL

In its October 3, 1986 judgment, the trial court held that PVL violated sections 251.002(f)(2) and 251.002(g) of the Code and granted Ragsdale's motion for permanent injunction. PVL did not perfect an appeal from that part of the October 3, 1987 trial court judgment finding PVL in violation of the Code and granting the permanent injunction. PVL also did not perfect an appeal from this Court's December 11, 1987 judgment. In the cause presently before us, PVL did not file a brief or appear for oral argument. Therefore, our review is limited to Ragsdale's challenge to the trial court's judgment of September 22, 1988, regarding the awards of damages and attorneys' fees.

## STATUTORY CONSTRUCTION OF SECTION 251.008

In his second point of error,[10] Ragsdale contends that the trial court erred in entering its judgment of September 22, 1988, because as a matter of law the trial court did not have discretion to determine the amount of damages and attorneys' fees. Ragsdale relies on the trial court's finding that PVL violated sections 251.002(f)(2) and 251.002(g) to support his claim of entitlement to recover damages and attorneys' fees under section 251.008(a).

Section 251.008(a)[11] provided that:

Any person who knowingly makes or knowingly accepts an unlawful campaign contribution or who knowingly makes an unlawful expenditure in support of a candidate *shall be civilly liable* to each opposing candidate whose name appeared on the ballot in the election in which the unlawful contribution or expenditure was involved *for double the amount or value of such unlawful campaign contribution or expenditure and reasonable attorneys' fees for collecting same.*

(Emphasis added). Ragsdale's contentions raise an issue of statutory construction. We focus our attention in this case on the word "shall" as used in section 251.008(a). Our inquiry is whether the term "shall" should be construed as mandatory or directory with respect to the award of damages and attorneys' fees.

The object of statutory construction is to ascertain and enforce the legislative intent. *Crimmins v. Lowry,* 691 S.W.2d 582, 584 (Tex.1985); *Calvert v. British–American Oil Producing Co.,* 397 S.W.2d 839, 842 (Tex.1966). Legislative intention must be ascertained from the language of the statute. *Seay v. Hall,* 677 S.W.2d 19, 25 (Tex.1984); *Duval Corp. v. Sadler,* 407 S.W.2d 493, 497 (Tex.1966). Since the legislature did not define the statutory term "shall," we must presume that the legislature intended the phrase to have its natural, ordinary, and familiar meaning. *Hopkins v. Spring Indep. School Dist.,* 736 S.W.2d 617, 619 (Tex.1987); *Satterfield v. Satterfield,* 448 S.W.2d 456, 459 (Tex.1969). Black's Law Dictionary defines the term as follows:

**Shall.** As used in statutes, contracts, or the like, this word is generally imperative or mandatory. In common or ordinary parlance, and in its ordinary signification, the term "shall" is a word of command, and one which has always or which must be given a compulsory meaning; as denoting obligation. It has a peremptory meaning, and it is generally imperative or mandatory. It has the invariable significance of excluding the

---

**10.** Ragsdale's points of error are not addressed in the order presented in his brief.

**11.** Now see TEX.ELEC.CODE ANN. § 253.131 (Vernon Supp.1990).

idea of discretion, and has the significance of operating to impose a duty which may be enforced, particularly if public policy is in favor of this meaning, or when addressed to public officials, or where a public interest is involved, or where the public or persons have rights which ought to be exercised or enforced, unless a contrary intent appears.

[Shall] may be construed as merely permissive or directory (as equivalent to "may"), to carry out the legislative intention and in cases where no right or benefit to any one depends on its being taken in the imperative sense, and where no public or private right is impaired by its interpretation in the other sense.

BLACK'S LAW DICTIONARY 1233 (5th ed. 1979) (citations omitted).

■■■ In addition, we must examine the statute as a whole to determine the legislature's intent when it used the term "shall" in section 251.008(a). One provision of a statute will not be given a meaning out of harmony or inconsistent with other provisions, even though it might be susceptible to such construction if standing alone. *See City of West Lake Hills v. Westwood Legal Defense Fund*, 598 S.W.2d 681, 684 (Tex. Civ.App.—Waco 1980, no writ). Moreover, we presume that a just and reasonable result was intended by the legislature. *State v. City of Greenville*, 726 S.W.2d 162, 169 (Tex.App.—Dallas 1986, writ ref. n.r.e.). The term "shall" in a statute is usually construed to be mandatory, unless legislative intent suggests otherwise. *City of Dallas v. Vaughan*, 750 S.W.2d 345, 347 (Tex.App.—Dallas 1988, no writ); *Schepps v. Presbyterian Hosp.*, 638 S.W.2d 156, 157–58 (Tex.App.—Dallas 1982), *modified on other grounds*, 652 S.W.2d 934 (Tex. 1983). Generally, a statutory provision is regarded as mandatory where the power or duty to which it relates is for the public benefit, good, interest or protection, for the security of public rights, or for the advancement of public justice. *City of Greenville*, 726 S.W.2d at 169; *Green v. County Attorney of Anderson County*, 592 S.W.2d 69, 73 (Tex.Civ.App.—Tyler 1979, no writ). In *Chisholm v. Bewley Mills*, 155 Tex. 400, 287 S.W.2d 943 (1956), the Supreme Court stated that "consideration should be given to the entire act, its nature and object, and the consequences that would follow from each construction. The statutory provision is mandatory when it is the essence of the thing to be done, and it is directory when it is included only for the purpose of promoting the proper, orderly, and prompt conduct of business." *Chisholm*, 287 S.W.2d at 945; *see Vinson v. Burgess*, 773 S.W.2d 263, 268 (Tex.1989); *Brown v. Owens*, 674 S.W.2d 748, 750 (Tex. 1984).

In the instant case, the legislative authority to regulate the electoral process flows directly from the Texas Constitution. Article XVI, section 2, mandates that "the privilege of free suffrage shall be protected by laws regulating elections and prohibiting under adequate penalties all undue influence therein from power, bribery, tumult or other improper practice." TEX. CONST. Art. XVI, § 2. Further, article VI, section 4, provides that the Legislature shall "make such regulations as may be necessary to detect and punish fraud and preserve the purity of the ballot box."[12] TEX. CONST. Art. VI, § 4. *See Wright v. Graves*, 671 S.W.2d 586, 589 (Tex.App.—Beaumont 1984, no writ). In light of this authority, the legislature enacted title 15 of the Election Code.[13] There are numerous criminal and civil penalties under title 15,

**12.** TEX.ELEC.CODE ANN. art. 1.01 (Vernon 1967) provided: The aim in adopting this Code is to state in plain language the laws governing the nomination and election of officers and of holding other elections, to simplify, clarify and harmonize the existing laws in regard to parties, suffrage, nominations, and elections, and to safeguard the purity of the ballot box against error, fraud, mistake and corruption, to the end that the will of the people shall prevail and that true democracy shall not perish from the Lone Star State. To that end the provisions of this Code shall apply to all elections and primaries held in this State, except as otherwise provided herein.

(The above provision was repealed in 1985 without comment).

**13.** Title 15 was rewritten in 1987 and entitled Regulating Political Funds and Campaigns. It was formerly entitled Political Funds Reporting and Disclosure Act of 1975.

including section 251.008, which may befall a candidate or person found to be in violation of the reporting, contribution, and expenditure requirements. *See* 35 BROOKS, COUNTY AND SPECIAL DISTRICT LAW § 11.22 (Texas Practice 1989). Though we have been unable to find specific legislative history regarding section 251.008, we reason that the legislature included penalties in the Code to discourage violation of the election laws.

■ The imposition of fines and penalties is within the police power of the legislature. *Hoeneke v. Lehman*, 542 S.W.2d 728, 730 (Tex.Civ.App.—San Antonio 1976, no writ). In this regard, the legislature has wide discretion. *Anguiano v. Jim Walter Homes, Inc.*, 561 S.W.2d 249, 254–55 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.). The Texas Supreme Court in *State v. Laredo Ice Co.*, 96 Tex. 461, 73 S.W. 951 (1903), stated:

> Prescribing fines and other punishments which may be imposed upon violators of the law is a matter peculiarly within the power and discretion of the Legislature, and courts have no right to control or restrain that discretion, except in extraordinary cases, where it becomes so manifestly violative of the constitutional inhibition as to shock the sense of mankind.

*Laredo Ice Co.*, 73 S.W. at 955; *see Anguiano*, 561 S.W.2d at 253.

■ Actual damages as it relates to monetary damages generally has no relevance in an action to recover statutorily liquidated civil penalties, because in such cases the penalties arise independent of and irrespective of actual monetary damages. *Texas Central R.R. Co. v. Hannay–Frerichs & Co.*, 104 Tex. 603, 142 S.W. 1163, 1166 (1912). Assessment of such penalties are applied as punishment of the offender and not as compensation to the injured party. *Whorton v. Nevitt*, 42 S.W.2d 1056, 1057 (Tex.Civ.App.—Waco 1931, no writ).

■ We note that penalties for Code violations regarding disclosure and reporting

requirements have been the subject of litigation in two similar cases. In *Hoeneke*, 542 S.W.2d at 730, a city mayoral candidate brought action against another mayoral candidate seeking liquidated damages and attorneys' fees for failure to timely file a campaign expense statement as required under the Code. The *Hoeneke* Court held that the penalty statute was constitutional; however, instead of awarding damages as provided under the provision, the court remanded the cause so that the jury could consider evidence on the issue of whether the defendant substantially complied with the statutory requirements. *Hoeneke*, 542 S.W.2d at 730–32. Likewise, in *Branaum v. Patrick*, 643 S.W.2d 745 (Tex.App.—San Antonio 1982, no writ), a candidate in a primary election brought suit against an opposing candidate to recover civil penalties for failing to timely designate a campaign treasurer. The San Antonio Court of Appeals again relied on the rule of substantial compliance, stating:

> [M]andatory provisions in the election laws are as a rule limited to those provisions requiring the election to be by ballot, setting the day and place where the election is to be held, and prescribing the qualifications and eligibility requirements. Other provisions of the election laws prescribing the conduct of elections, the matter of publishing notices and duties of candidates are usually directory only and irregularities which do not prevent the voters from exercising freely and fairly their right to suffrage, or from having their votes properly counted are generally treated as informalities which do not vitiate the election, especially when there is no law providing that such irregularities shall render the election void. In such cases a substantial compliance is sufficient if from the facts it can reasonably be presumed that the failure to observe the strict letter of the law did not affect the result of the election.

*Branaum*, 643 S.W.2d at 750 (citations omitted).[14] Further, the court held that the

---

**14.** While the cases cited in *Branaum* involved violations of the disclosure and reporting re-

trial court could consider evidence of whether the contributions and expenditures made prior to the designation of a campaign treasurer affected the outcome of the election or acted to the detriment of the plaintiff. *Branaum*, 643 S.W.2d at 750–51.

We do not find the holdings in *Hoeneke* and *Branaum* persuasive. Specifically, we do not agree with the San Antonio Court's decision to apply the rule of substantial compliance with respect to penalty provisions under the Code. These cases cite no authority in support of their decision to consider evidence of whether the unlawful contributions and expenditures affected the outcome of the election or acted to the opposing candidate's detriment. Election law provisions deemed mandatory in nature did not relieve a candidate from meeting the filing deadline set forth in the law. *Canady v. Democratic Executive Committee*, 381 S.W.2d 321, 324 (Tex.1964). The supreme court in *Canady* noted with approval the cases of *State of Texas ex rel. Edwards v. Reyna*, 160 Tex. 404, 333 S.W.2d 832 (1960), and *McWaters v. Tucker*, 249 S.W.2d 80 (Tex.Civ.App.—Galveston 1952, no writ), as authority for applying "a rather strict construction in dealing with our election laws." *Canady*, 381 S.W.2d at 324. In *McWaters*, this resulted in denying a place on the ballot to a candidate who had failed to execute an acknowledgement to his application before the deadline passed. *McWaters*, 249 S.W.2d at 82.

We observe that *Hoeneke* and *Branaum* were decided prior to recent amendments to the Code. These recent amendments make the requirement of filing a designation of campaign treasurer and the time for its filing mandatory provisions. *Ragsdale*, 743 S.W.2d at 343. We also recognize that "[s]tatutes imposing penalties are strictly construed, and one who seeks to recover a penalty must bring himself clearly within the terms of the statute." *Hatch v. Davis*, 621 S.W.2d 443, 446 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.) (citing *Tenneco Oil Co. v. Padre Drilling Co.*, 453 S.W.2d 814, 818 (Tex.1970)). However,

where a statute provides a particular remedy, the courts should be wary of reading into it other remedies which negate the protection for competing interests which the legislature considered when shaping the remedy. *See Poly–America, Inc., v. Dallas County Appraisal Dist.*, 704 S.W.2d 936, 937 (Tex.App.—Waco 1986, no writ); *Larkins v. City of Denison*, 683 S.W.2d 754, 757 (Tex.App.—Dallas 1984, no writ).

In the instant case, we find no ambiguity or vagueness in the language of 251.008. Section 251.008 is a remedial statute. The enforcement of this remedy is the essence of the statute and promotes compliance with the provisions of the Code, especially those that proscribe certain acts as being unlawful. A mandatory reading of section 251.008 forwards the clear objective of the legislature in promulgating regulations and penalties aimed at preserving the purity of the ballot box and protecting free suffrage from undue influence or other improper practice. To give section 251.008 a permissive reading, thus allowing a judge the discretion to waive the fine for violators of the provision, defeats the stated purpose of the provision and vitiates the legislature's authority to impose penalties and fines. Such reading of section 251.008 would diminish the legislature's effort to ensure compliance with express safeguards for election funding and expenditures.

We conclude that the term "shall" as used in section 251.008 sets forth a mandatory provision establishing the right of a designated person to recover, by suit, statutorily prescribed damages for violation of the Code. By enacting section 251.008, the legislature specifically intended to impose civil liability upon those who violate the Code by accepting unlawful campaign contributions or making unlawful expenditures. Section 251.008 is not designed to compensate the candidate for actual damages but rather to deter violators and encourage enforcement by candidates and others directly participating in the process,

---

quirements under the Code, the penalties at issue in these cases were either striking the candidate's name from the ballot or voiding the

election results. It appears that the courts applied a standard of substantial compliance in order to avoid these harsh results.

rather than placing the entire enforcement burden on the government. As a result, the expense of enforcing the Code provisions is placed on those who violate the law rather than on the taxpaying public. *See Anguiano*, 561 S.W.2d at 254. Once a party has placed himself within the terms of section 251.008, he is entitled to recover damages as set forth therein. The court's proper function in applying the law to the facts of the case does not, except for constitutional limitations, encompass a consideration of whether the statutory penalties are viewed as severe or mild; that is a choice left to the legislative branch of government. We sustain Ragsdale's second point of error.

## COMPUTING DAMAGES UNDER SECTION 251.008

In point of error three, Ragsdale contends that the trial court erred in entering its judgment of September 22, 1988, which awards nominal damages of one dollar ($1) only, because statutory damages were proved as a matter of law. Ragsdale asserts that the trial court disregarded the uncontroverted evidence of detailed illegal expenditures made by PVL in violation of the Election Code.

In its October 3, 1986 judgment, the trial court concluded that PVL accepted unlawful campaign contributions and made unlawful expenditures. The terms "unlawful campaign contribution" and "unlawful campaign expenditure" are defined under the Code. *See supra* note 3. The record before us is documented with precise details of the unlawful contributions and expenditures accepted and made by PVL. This evidence was introduced at the May 2, 1986 hearing and stipulated by both parties as admissible for the purpose of assessing damages at the September 7, 1988 hearing.[15] This evidence is uncontroverted. The record includes the campaign disclosure report filed by PVL with the Secre-

tary of State of Texas on May 2, 1986. This report details by date, donor and amount, the contributions accepted by PVL, totaling $20,000. Similarly, the report lists expenditures made by PVL, including date, recipient, purpose and amount, totaling $14,944. All of the contributions and expenditures on their face are shown to have taken place prior to the designation of campaign treasurer.[16] In the face of this evidence, the trial court awarded Ragsdale nominal damages in the amount of $1.

 Our role on review is to determine whether the trial court erred in rendering judgment based on the record before it. *Great North Am. Stationers, Inc. v. Ball*, 770 S.W.2d 631, 634 (Tex.App.—Dallas 1989, no writ). This Court has the power to modify the amount of recovery and reform a judgment to conform with the pleadings and evidence. *State Nat'l Bank v. Farah Mfg. Co.*, 678 S.W.2d 661, 697 (Tex.Civ.App.—El Paso 1984, no writ). Additionally, if the trial court erred in computing damages, we may reform the amount of damages. *Atlas Chemical Indus., Inc. v. Anderson*, 514 S.W.2d 309, 319 (Tex.Civ. App.—Texarkana 1974), *aff'd*, 524 S.W.2d 681 (Tex.1975); *see City of Greenville*, 726 S.W.2d at 170.

 We hold that the trial court erred in assessing Ragsdale's damages in a manner contrary to that expressly declared in section 251.008 of the Election Code. Clearly, Ragsdale has placed himself within the terms of the statute. Ragsdale's name appeared on the ballot along with the names of his opponents and he brought this action to enjoin PVL from committing further violations of the Code and to recover statutory damages as set forth in section 251.008 of the Election Code. As a matter of law, he was entitled to recover liquidated damages of double the amount or value of the unlawful campaign contributions or expenditures and reasonable attorneys' fees as

---

15. The parties stipulated to this evidence and provided that such evidence would be subject to any objections made regarding its admissibility at the original hearing.

16. The only contributions and expenditures at issue in this case are those made during the period of the 1986 Democratic primary, prior to May 2, 1986, when PVL filed its designation of campaign treasurer with the Secretary of State.

prescribed under section 251.008. PVL's unlawful contributions and expenditures are detailed in the disclosure report made by PVL to the Secretary of State and were uncontroverted at trial. Thus, Ragsdale is entitled to recover $40,000, which is double the amount of such unlawful contributions and the amount prayed for on appeal. We sustain Ragsdale's third point of error. Accordingly, we reform the trial court's judgment of September 22, 1988, and award Ragsdale damages in the amount of $40,000.

## RECOVERY OF ATTORNEYS' FEES UNDER SECTION 251.008

■ In his fourth point of error, Ragsdale contends that the trial court erred in finding attorneys' fees of $150 because such finding was against the great weight and preponderance of the evidence. Ragsdale asserts that the uncontroverted testimony presented at trial shows that the attorneys' fees incurred in this case were necessary to protect his rights and were reasonable for the services rendered.

Section 251.008 of the Code authorizes the award of "reasonable" attorneys' fees to the recovering party. The amount of an award of attorneys' fees is a question for the trier of fact. *International Security Life Ins. Co. v. Spray*, 468 S.W.2d 347, 349 (Tex.1971); *Knopf v. Standard Fixtures Co.*, 581 S.W.2d 504, 507 (Tex.Civ.App.—Dallas 1979, no writ). The elements to be considered by the trier of fact in its determination of reasonableness of attorneys' fees include the nature and complexity of the case, the amount in controversy, the amount of time and effort required, and the expertise of counsel. *Rosas v. Bursey*, 724 S.W.2d 402, 410–11 (Tex.App.—Fort Worth 1986, no writ); *Tuthill v. Southwestern Public Service Co.*, 614 S.W.2d 205, 212–13 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.).

The allowance of attorneys' fees rests in the sound discretion of the trial court, and its judgment will not be reversed without a showing of abuse of discretion. *Rosas*, 724 S.W.2d at 410; *Reintsma v. Greater Aus-*

*tin Apt. Maintenance*, 549 S.W.2d 434, 437 (Tex.Civ.App.—Austin 1977, writ dism'd). An abuse of discretion is more than mere error. *McNutt v. Teledyne Indus., Inc.*, 693 S.W.2d 666, 668 (Tex.App.—Dallas 1985, writ dism'd). The test for whether the trial court abused its discretion is whether the court acted without reference to any guiding rules and principles, or in other words, whether the act was arbitrary or unreasonable. *Griggs v. Capitol Mach. Works, Inc.*, 701 S.W.2d 238 (Tex.1985). While an abuse of discretion does not exist where a trial court bases its decision on conflicting evidence, a trial court does abuse its discretion when it fails to properly apply the law to undisputed facts. *RSR Corp. v. Hayes*, 673 S.W.2d 928, 930 (Tex. App.—Dallas 1984, writ dism'd).

The record reflects that Ragsdale was represented by counsel from the time the suit originated in April of 1986; through appearance for temporary and permanent injunction hearings; through briefing and oral argument in this Court of Appeals; through hearings after remand to the trial court; and through a second briefing and oral argument before this Court. His attorneys testified as to the time devoted to the work, the nature of the services rendered, and that reasonable attorneys' fees for handling this case were $22,500.[17] This evidence concerning the reasonableness of attorneys' fees is uncontroverted. In view of the uncontroverted evidence in the record, and recognizing the complexity of the case as well as the undisputed amount of time and effort devoted by counsel for the prevailing party in this case, we hold that the trial court abused its discretion in finding $150 as reasonable attorneys' fees. The trial court's award was arbitrary and unreasonable. We sustain Ragsdale's fourth point of error.

We therefore sever that portion of the judgment and remand the cause for a new trial on attorneys' fees. Tex.R.App.P. 80(b). Because we sustain Ragsdale's second, third, and fourth points of error, we do not reach his remaining points.

---

**17.** Ragsdale also pleaded for attorneys' fees in the event of an appeal.

The judgment of the trial court is reversed and modified in part and remanded in part for further proceedings in accordance with this opinion.